ROBERT CLAY, Respondent, v. CHICAGO & ALTON RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals, December 21, 1886.

1. NEGLIGENCE—QUESTION OF FACT.—If there is any evidence from which negligence is legally inferable, the cause must be submitted to the jury for the determination of that question.

2. ——— SPECIAL FINDINGS—PRACTICE. —Answers by the jury to specific questions, which answers are not conclusive of the plaintiff's contributory negligence, will not entitle the defendant to a verdict thereon in opposition to the general verdict in his favor.

APPEAL from the St. Louis Circuit Court, GEORGE W. LUBKE, Judge.

*Affirmed.*

MARTIN, LAUGHLIN & KERN, for the appellant.

J. D. & C. P. JOHNSON, for the respondent.

Thompson, J., delivered the opinion of the court.

This case was before us on a former appeal, and is reported in 17 Mo. App. 629. We there reversed the judgment and remanded the cause. Upon the trial from which this appeal is taken, the plaintiff testified that, at the time of the accident which is the subject of the suit, he was in the employ of Hayner & Company; that he was ordered by them to go to the defendant's station in East St. Louis, Illinois, and unload a car of agricultural implements, consigned to them over the defendant's road and delivered to them on board; that he arrived at the station about 9 A. M., and was shown the car load of machinery by the defendant's agent; that, in conjunction with two other men, Anderson and Stevens, he proceeded to take the machinery out of the car and put it on the depot platform; that he worked at this until noon, when they (the three men) had dinner in the car, the work being unfinished; that Anderson got out of the car upon the platform, which was connected with the car by a small bridge or platform; that at this time he (plaintiff) heard some one call out, "Look out for the platform," and saw Anderson move this connecting platform and walk away; that Stevens and himself remained in the car; that a few moments afterwards the defendant pulled the car out with a locomotive, pulling it pretty fast some distance to the east, and then moved it again, by throwing it, detached from the locomotive, upon a switch against another car with such force as to throw a large box of machinery in the car in which the plaintiff was, against the plaintiff's leg, breaking it; that he heard no one say that the car was to be moved and that those who were in it were to get out of it. On cross-examination the plaintiff stated that he was sitting on a box near the door when the car first moved; that when it moved he got up and went to the door of the car, and was looking out when it was moved and also when he was injured; that if he had remained sitting as

at first the box could not have fallen upon him; that the car was half unloaded at the time; that there were boxes in one end of the car, and in the other end boxes with iron machine wheels placed on them horizontally; that the box that fell upon him was about six feet high and stood on a base of two by three feet in dimensions, and that it weighed about six hundred pounds; that the car was stopped long enough after it left the depot and before it was thrown against the car which it struck for him to have gotten out; that he would have done so if he had not thought the car he was in was to be pulled back to the depot right away, and for the further reason that it would not have been safe for him to get out. Other testimony adduced by the plaintiff corroborated his version of the accident. His companion, Stevens, who was in the car with him at the time of the accident, testified that the car was thrown against the other car with such force, as not only to throw the box down upon the plaintiff, but also to throw down the iron wheels that were upon the boxes in the end of the car, and to throw down other machinery; that the iron wheels that were thus shaken down were lying flat on the boxes, and were about four feet in diameter with tires about four inches broad; that the box by which the plaintiff was hurt rested on a base the dimensions of which were about two by three feet; that the narrow side of this box was fore and aft of the car, that is, lengthwise of the car, and that the box fell on its narrow side.

The defendant produced the testimony of two switchmen employed by it at the place of the accident on that day, one of whom, who seems to have been in command of the others, testified that their duties were, at that time every day, that is to say, between twelve and one o'clock, to pull out the loaded cars from freight house number three of the defendant, and put empty cars in for the afternoon; that he and two switchmen went there with an engine, which had upon it a fireman and an engineer, to pull the loaded cars out and replace

them with "empties" (meaning empty cars), and to put the car, in which the plaintiff was, back at the open platform where it was before they moved it; that when they first went there to pull the loaded cars out, one of the men who were unloading machinery in this car asked the witness if they were going to switch the car, and the witness told him, "Yes, and that they (apparently meaning him and his companions) had better get out of the way;" that was all the witness knew about it until they got up in the yard; but witness supposed (meaning supposed at that time) that they all got out of the car. He and his assistants coupled on to these cars and pulled this car in which the plaintiff was, with the others behind it, out from the platform. They put the "Missouri Division" on one track, and the balance, that was to go out on the main line, on another track, except this car. This car they throwed onto some "empties." They cut it off from the engine and switched it against some "empties" that they wanted at the freight house. The car was not running at the rate of more than two or three miles an hour when it struck the "empties." About five minutes afterwards some one told the witness that a man was hurt in that car. He went down to see who it was, and found that there were two men in the car, one of whom was pretty badly hurt. Witness also testified that there was a bridge at the time he and his assistants went to move this car, running from its door to the main platform. He could not say whether this bridge was moved or not. There were three men in that car when they went to move it. The witness was within ten or twenty feet of one of them when he told him that they were going to move the car. One of the men was on the platform and two were in the car. Witness had been switching cars for eight or ten years around freight yards and was familiar with the speed with which such cars are usually moved when they are being switched, cut off, and run against other cars. He testified that this car, when it struck

the "empties" to which he referred, was not running nearly as fast as cars usually do when they are being switched or cut off. They had to move this car in order to move the loaded cars out and put the "empties" in. The witness also testified that, when they are about to move cars that are being unloaded or loaded at the freight house, they usually notify the men that are loading or unloading them, that they are going to move them, by "hollering" at them, or by telling them, when they are near enough (meaning near enough to tell them). He also stated that they had sufficient force to move these cars safely on that day. The testimony of the other switchman corroborated that of this witness in a general way, except as to the point that notice was given to the plaintiff and to his companions of the intention of the foreman to move the particular car, the witness saying that he was standing eight or ten car-lengths away and did not hear the foreman say anything to that effect to the man who was standing on the platform.

The court submitted the case to the jury, upon an instruction tendered by the plaintiff, drawn in very general terms, to the effect that, if the defendant did not use reasonable care in switching the car and that the plaintiff thereby received the injuries complained of, being himself at the time in the exercise of reasonable care and prudence, as called for by other instructions given, they must find for the plaintiff; and also upon six instructions tendered by the defendant, which placed the law of the case, upon the hypothesis of the defendant, before the jury in terms sufficiently clear and explicit.

The court refused two instructions tendered by the defendant, which we need not set out in detail, because it is clear that the court rightly refused them, since the effect of them was to decide the whole case for the jury upon the facts, both as to the negligence of the defendant and the contributory negligence of the plaintiff. Being of opinion that there was evidence of negligence

on the part of the defendant, and that neither the plaintiff's evidence nor the other uncontradicted evidence in the case leads conclusively to an inference of contributory negligence, we are clear that the court did not err in refusing these instructions.

In lieu of these instructions so refused the court gave the two following instructions which consist of the instructions refused, modified, and supplemented by the court :

"5. The court instructs the jury that, although they may find from the evidence, that the defendant switched the car in which the plaintiff was injured, against another car with such force as to throw a box therein against the plaintiff, and displace other machinery therein, yet the court further instructs the jury that these facts alone do not establish the fact that the defendant negligently moved the car in which the plaintiff was injured ; provided the plaintiff had notice or warning that it was the intent and purpose of the defendant's employes in charge of its switching train to switch said car against the other car."

"7. The court instructs the jury that, if they believe from the evidence that the defendant did not notify the plaintiff, at the time it first moved the car in which the plaintiff was injured, that it was to be moved, yet if, subsequent thereto and prior to the plaintiff being injured, said car was either stopped or run so slowly that the plaintiff could with safety have moved therefrom, it was his duty to have done so, and if they believe that his injury would not have happened had he have done so (sic), then they will find for the defendant ; provided the jury also believe and find that the plaintiff knew, or in the exercise of ordinary care then and there might have known, that it was the intent or purpose of the defendant's employes in charge of its train to switch said car against the other car."

The court submitted five special interrogatories to the jury under the statute, which they answered cate-

gorically, yes or no.   These interrogatories, with the answers of the jury, were as follows :

"1.   Did the defendant notify the plaintiff, at the time it moved the car in which he was injured, that it was to be moved ?"   A.   "No."

"2.   Did the defendant, just before or at the time it moved this car in which the plaintiff was injured, give the plaintiff such notice or signals that the car was going to be moved, as would have satisfied a reasonably careful man that it was going to be moved ?"   A.   "Yes."

"3.   Did the plaintiff know, or could he, by the exercise of reasonable diligence, have known, before the car in which he was injured was moved, that the car was to be moved ?"   A.   "Yes."

"4.   Did the defendant, after it commenced to move this car in which the plaintiff was injured, and up to the time of the accident to the plaintiff, stop the said car, or move it so slowly that the plaintiff could with safety have moved from said car ?"   A.   "Yes."

"5.   Did the defendant switch the car in which the plaintiff was injured with such care and caution as was reasonably safe and proper for the purpose for which said car was moved by it ?"   A.   "No."

The jury returned a general verdict for the plaintiff, and judgment was entered thereon.   The defendant moved, within four days thereafter, for a new trial, and on the same day for a judgment in favor of the defendant upon the special findings of the jury.   The court overruled both of these motions, and the defendant has appealed to this court.

The principal question in this case is, whether the court erred in overruling the motion for judgment on the special findings.   We are clear that it did not.   In those findings the jury found that the defendant was negligent in switching or shunting the car, and also that the defendant, before it moved the car, gave the plaintiff such notice or signals that the car was going to be *moved away from the platform*, as would have satisfied

a reasonably careful man of that fact. They also found that the plaintiff knew, or could have known by the exercise of reasonable diligence, before the car was moved, that it was going *to be moved*. They further found that, after the defendant commenced to move this car, it either stopped the car or moved it so slowly that the plaintiff could have alighted from it with safety. But the conclusion that the plaintiff was guilty of contributory negligence, in remaining in the car in this state of facts, by no means follows as a conclusion of law. The plaintiff and his companions were unloading their employer's goods from the car. Their task was but partly finished when their dinner hour came and they were eating their dinner in the car. Their purpose was to remain after the dinner hour and complete the task for which they had been sent there. Upon the facts as found by the jury, they had received notice, or might with reasonable care have known, that the car was *to be moved out;* but, according to the plaintiff's testimony, they remained in the car with the idea that it was to be moved back to the platform, after being moved out for the purpose of making some changes in the position of other cars, so that they could complete their task of unloading it after it was so moved back ; and there is no testimony tending to contradict this, or to show that he remained in the car with any other idea or for any other purpose, but on the contrary the testimony adduced by the defendant is to the effect that it was the purpose of the defendant's servants to move the car back to the platform, as the plaintiff expected they would do. In this state of the case, there is nothing in the plaintiff's conduct in remaining in the car with one of his companions from which the inference necessarily follows as matter of law, either that he was unlawfully in the car, or that he was guilty of negligence in remaining there, unless he had received from the defendant's servants, in addition to information that they were going to move the car, information that they were also going *to shunt it*

*against other cars.* There is no evidence in the case that they gave to the plaintiff or to his companions any such information, and the jury have not so found. The moving of the car out upon another track in order to get other cars in behind it, and the moving of it back to the platform where it originally stood, would not necessarily have entailed any danger to any one remaining in it, and an inference that the plaintiff, by remaining in it, without notice of any purpose on the part of the defendant's servants beyond this, was guilty of contributory negligence in respect of the injury which subsequently happened, would not have followed as a legal conclusion.

On the other hand, without attempting to lay down as matter of law, what the duty of the switchmen of a railway company is in such a situation, it seems clear that a jury would have been warranted in finding that it was their duty, in the exercise of ordinary care, provided it was their purpose to shunt this car against other cars, to warn persons who might be lawfully in the car, and who might not be familiar with the dangers arising from shunting or throwing cars against each other, that it was their purpose to shunt or throw this car against other cars. Nor would it be an unreasonable inference for the triers of the facts to make, that the servants of the defendant, in such a situation, ought to look into the car for the purpose of seeing whether the freight piled in it was so piled as to be easily thrown down, before shunting it with considerable force against other cars, there being persons within it at the time. It can not, therefore, be said as matter of law that the answer of the jury to the fifth interrogatory, to the effect that the defendant did not switch the car with such care and caution as was reasonably safe and proper for the purpose, was unwarranted.

In making up their verdict upon the question of the negligence of the defendant and the contributory negligence of the plaintiff, the jury were authorized to take

into consideration the fact that the defendant's servants were the actors, and that the plaintiff was passive ; that the defendant's servants were experienced switchmen and familiar with the dangers which accrue from throwing or shunting cars against each other, to persons who may be inside the cars thus handled, while, in the absence of any evidence to the contrary, the inference would be that the plaintiff was unfamiliar with such dangers. It would, therefore, be a conclusion not unwarranted by the law, that it was the duty of the defendant's servants, before doing what they did, to admonish those in the cars of what they intended to do and of the danger that might flow from it. Now, the jury have not found that they did this, nor does the evidence conclusively establish the fact that they did it. On the other hand, the jury have found that they did not notify the plaintiff that the car was to be moved at all, although the situation was such that the plaintiff might have discovered from such notice or signals as they gave ; not that the car was to be shunted forcibly against another car, but merely that it was to be moved out from the position where it then was. In all this there are no materials on which a judgment could be constructed, under the statute, in favor of the defendant.

We see no error in the record. The judgment will be affirmed. It is so ordered. Judge Lewis concurs. Judge Rombauer concurs in the result.