The State v. Primm.

## THE STATE v. PRIMM, *Appellant.*

1. **Seduction:** INDICTMENT. An indictment for seducing and debauching, under promise of marriage, a female of good repute, need not allege that defendant was unmarried, nor that the person seduced agreed to marry defendant, nor that she was of sufficient age to negotiate marriage with him.

2. ———— : EVIDENCE. The evidence in a prosecution for seducing and debauching, under promise of marriage, a female of good repute examined and *held* that the prosecutrix was not a female of good repute and was not within the protection of the law.

3. **Appellate, Practice:** VERDICT. Where a verdict must be ascribed to prejudice, passion or partiality, and not to that calm weighing of the facts in evidence which should always characterize the deliberations of a jury, the supreme court will interfere and set it aside.

4. **Practice:** INSTRUCTION. An instruction should not be given when there is no evidence upon which to base it.

5. **Seduction:** CORROBORATION OF PROSECUTRIX. In a prosecution for seducing a female under promise of marriage, the evidence of the woman as to the promise of marriage "must be corroborated to the same extent required of the principal witness in perjury." (R. S. 1879. sec. 1912.) The evidence in a case examined and held that the prosecutrix was not so corroborated.

*Appeal from Knox Circuit Court.*—HON. B. E. TURNER, Judge.

REVERSED.

*O. D. Jones* and *W. C. Hollister* for appellant.

(1) The motion to quash the indictment should have been sustained. It fails to allege that Maggie Huffman agreed to marry defendant, or that she relied on the mutual promise so made and subsisting at the time she was seduced; nor that any time was ever agreed upon to be married; nor any facts from which the law would imply a reasonable time. *State v. Helm,* 6 Mo. 263; *State v. Rose,* 25 Mo. 426; *State v. Emerich,* 87 Mo. 110. (2) The third instruction for the state was not warranted by the evidence. (3) The evidence does not support the verdict.

*B. G. Boone,* Attorney General, and *R. F. Walker* for the State.

(1) An indictment which charges an offense in the language of the statute creating it is sufficient. R. S. 1879, sec. 1259; *State v. Anderson,* 81 Mo. 78. (2) The instructions given on behalf of the state are authorized by the evidence and are correctly framed.

SHERWOOD, J.—The defendant was indicted under the provisions of Revised Statutes, 1879, section 1259, for seducing and debauching under promise of marriage an unmarried female of good repute, etc. Tried, he was convicted and sentenced to imprisonment in the county jail for three months and to pay a fine of five hundred dollars.

I. Though objections are made to the indictment, it follows the language of the statute, is in the usual form and is not open to the criticism made on behalf of defendant. It was not necessary that it should be alleged that defendant was unmarried, because the statute levels its denunciations and penalties as well against a married man as against a single man; nor was it necessary to allege that the person seduced agreed to

marry defendant, nor that she was of sufficient age to negotiate marriage with him.

II.  The testimony in this cause is, to a great extent, couched in the very vernacular of obscenity.  It is to be hoped that such a foul record, as this, has never before been filed in an appellate court.  At the close of the testimony for the prosecution, the defendant interposed a demurrer to the evidence ; but the propriety of the ruling upon it is unimportant owing to the testimony subsequently introduced on behalf of the defendant.  Without detailing all the disgusting particulars of that testimony it will answer the present purpose briefly to state its most important portions, giving those facts which are undisputed by the prosecuting witness as well as those which she controverts.

She states that the defendant began waiting on her in the fall of 1885, and that the crime alleged in the indictment occurred and was consummated about November 28, 1885 ; but a full month before that time, to use her own language, she states: "Primm first talked to me about having sexual intercouse about last of October, 1885 ; he tried to get me to drink whiskey and tried to put his hand under my clothes ; he said I was the only girl on earth he cared anything for ; he then got me down on the floor,—got his pants down and my dress up—tumbled me round on the floor trying to have intercourse with me for half an hour until I was clean given out.  No, we did not have any promise of marriage at that time ; he stayed that night till nearly midnight.  I never mentioned it to any one." She also admits that she cut hair from her privates and sent it rolled up in a paper to a neighbor's daughter,— and that on the night of November 28, the night of the alleged crime, and before its accomplishment, her father, being asleep in bed in the same room in which she and defendant were, exposed his nakedness, in a very pronounced manner, and while she denies having

laughed at the exposure, yet she does not say the immodest spectacle caused her any blushes or confusion, or that she imitated the example set by Shem and Japheth in similar circumstances; but on the contrary she admits that she and defendant subsequently took a change of venue to the kitchen, in order that she might yield her person to the gratification of his passion, and this being accomplished, they returned to the room where her father was, and he being then awake, in response to his inquiries as to where they had been, said "out in the kitchen to get something to eat."

She admits having told the neighbors that her step-mother, who died in 1883, had a nameless disease, and states this was a fact, and she does not deny that in 1883, she took unseemly liberties with her step-brother, Willie Hunter, or that she offered him a certain favor; she only says that he was only thirteen or fourteen years old at the time, and small of his age, when he left her father's.

Now, as to charges made which she does dispute: It is testified by other witnesses that she was vile in conversation and vile in conduct for upwards of three years prior to the indictment being found and coming down to a period within a month or so before the act done upon which the indictment is based. Her step-brother, Newton Hunter, testifies that in 1882, at her instigation he had sexual intercourse with her, and kept it up until he left in 1883. Instances are frequent where other witnesses, neighbors' daughters, testify to the highly improper and vulgar language and conduct of the prosecuting witness. One of them states that on one occasion her husband in her presence without rebuke from the prosecutrix offered the latter a small sum for a certain gratification, and asked her why she did not resort to prostitution for a living, whereupon she replied: "I am *not ready yet.*"

Two other female witnesses state that in November, 1885, the prosecutrix was in Queen's field with them

picking hazelnuts, when she said : "Lena Pults was set up and she heard she was going to swear it on Bud Parish. Why don't she swear it on Jim Primm or some man who has got the 'mon' or money. When I have a kid I will swear it on Jim Primm." She said "would not that make Mrs. Primm (defendant's mother) rave and Mollie (his sister) would be crazy sure enough ; and wouldn't that bring the Primms down?" These witnesses also testify to other expressions and acts of the prosecutrix, totally at variance with all of our conceptions of a pure-minded girl.

Another witness states to the effect that about two years before the trial which occurred in December, 1886, he broached a certain subject to her while going home with her one night from a neighbor's when she replied in effect, that some one is behind us; but if he would wait till some future time it would be all right. Another witness testifies that he had sexual intercourse with the prosecutrix prior to the time defendant went with her. And her own brother testifies that in 1884 he had intercourse with his own cousin, who was then in bed with his sister, and that he "hoped" the latter was asleep. He also states that at a table before his sister and brother-in-law, he charged his cousin with the special fact, and after this she visited his sister, and staid with her at her father's house.

After having carefully read the testimony in this cause, we feel constrained to say that, if we are to be guided by the great preponderance of the testimony, a preponderance only met by her own testimony, and corroborated too, in certain particulars by her own admissions, the prosecutrix was not of that class over whom the law extends its protection. This must be true if any reliance is to be placed upon human testimony, and there was no attempt made to impeach the witnesses who contradicted the prosecutrix on so many important particulars as aforesaid. The result obtained by the verdict must therefore be ascribed to prejudice, passion

or partiality and not to that calm weighing of the facts in evidence which should always characterize the deliberations of a jury. On such occasions, this court does not hesitate to interfere as is attested by our decisions. *Spohn v. Railroad*, 87 Mo. 74; *Whitsett v. Ransom*, 79 Mo. 258; *Baker v. Stonebraker's Adm'rs*, 36 Mo. 345; *Price v. Evans*, 49 Mo. 396; *Garrett v. Greenwell*, 92 Mo. 120. This is the rule uniformly announced in civil cases, and in those which are criminal, we have never abdicated the right we possess to overturn verdicts which are not based upon the corner stone of substantial justice. *State v. Packwood*, 26 Mo. 340; *State v. Burgdorf*, 53 Mo. 65; *State v. Mansfield*, 41 Mo. 470; *State v. Daubert*, 42 Mo. 238; *State v. Brosius*, 39 Mo. 534; *State v. Jaeger*, 66 Mo. 173; *State v. Castor*, 93 Mo. 242.

III. And, in any event, the testimony in this cause did not warrant the third instruction given at the instance of the state, because there is not the slightest testimony indicating that if the prosecutrix was criminal with Hunter in 1883, she ever reformed and was honestly pursuing the path of virtue at the time she began to receive the attentions of the defendant. This instruction was consequently erroneous and misleading, because of having no basis in the evidence.

IV. Nor must it be forgotten that in prosecutions like the present one, the rule of the statute, as defined in section 1912, is, the evidence of the woman as to the promise of marriage "must be corroborated to the same extent required of the principal witness in perjury." Here, her oath as to the promise made is met by that of the defendant's in denial of the charge, and an equipoise of oath against oath thus occurs. Looking at the whole testimony, we are not prepared to say that the prosecutrix was corroborated, to the extent required by the statute. *State v. Reeves*, 97 Mo. 668.

V. But even granting that such corroboration occurred, for reasons already given, we are persuaded

by abundant and cogent testimony of disinterested witnesses, witnesses whose testimony is supplemented by her own damaging admissions that though of "good repute," she was not such a one as comes within the purview and protection of the section upon which the indictment was bottomed. See *State v. Patterson*, 88 Mo. 38, and cases cited.

Holding these views, we reverse the judgment and discharge the prisoner. All concur, except BARCLAY, J., who dissents.