MARGARET DUGGAN, Respondent v. THE WABASH WESTERN RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, June 8, 1891.

1. **Appellate Practice:** VERDICT : SET ASIDE : PREJUDICE : REASONABLE AMOUNT. Where a verdict is the evident result of prejudice, partiality or mistake, and not of that calm and considerate weighing of the facts in evidence which should always characterize the deliberations of a jury, the appellate court will not hesitate to interfere ; but, in order to do this, the testimony and surrounding circumstances must be such as to raise the strongest inference that such was the case. On the evidence in this case the amount of the verdict is deemed reasonable.

2. **Verdict:** RULE OF INTERFERENCE : EVIDENCE. Whenever, from all the facts and circumstances in evidence, a jury may, without violence to the dictates of reason and common sense, infer a fact on account of its known relation to the facts proved, the court should not interpose its own different conclusion. The evidence in this case is reviewed in the light of the above and other rules in relation to interference with verdicts, and is found sufficient to sustain the verdict in this case. [ELLISON, J., *dissenting* in a separate opinion.]

*Appeal from the Jackson Circuit Court.*—HON. R. H. FIELD, Judge.

AFFIRMED.

*Geo. S. Grover* and *F. W. Lehmann*, for appellant.

There was no evidence to support the verdict. *Stepp v. Railroad*, 85 Mo. 229; *Moore v. Railroad*, 28 Mo. App. 622; · *Walton v. Railroad*, 32 Mo. App. 634; *Diel v. Railroad*, 37 Mo. App. 454; *Huhn v. Railroad*, 92 Mo. 440; *Soeder v. Railroad*, 100 Mo. 673.

*Botsford & Williams* and *Geo. F. Ballingal*, for respondent, argued that the evidence supported the verdict.

SMITH, P. J.—The plaintiff in her petition alleged that she was the widow of Daniel Duggan, who, while in the employment of defendant as night switchman at its yard in Kansas City, Missouri, and engaged in his duty of coupling cars, was necessarily compelled to step on the track of defendant's switch yard, and between and near the cars of defendant's train, and in doing so, without any fault on his part, and by reason of defendant's negligence in not blocking up the frog of said switch track, his foot was caught and firmly held in and between the rails of the track onand a part of the switch, whereon and over which defendant's train was being made up, and by reason thereof he was unable to remove his foot therefrom, and that, while his foot was so caught and held in the frog, the train of cars, so being made up thereon, was by defendant propelled and pushed forward and over the switch and on his body, crushing him beneath the cars and inflicting injuries which caused his immediate death, etc. Plaintiff demanded judgment for $5,000. The answer was a general denial, coupled with the plea of contributory negligence. The plaintiff had judgment for $1,500, and from which defendant has appealed.

I.   The principal ground upon which the appealing defendant challenges the judgment is, that the evidence adduced was insufficient to authorize a verdict. The

well-settled rule in this state is, that where the verdict is the evident result of prejudice, partiality or mistake, and not that calm and considerate weighing of the facts in evidence which should always characterize the deliberations of a jury, the appellate courts will not hesitate to interfere. *Spohn v. Railroad*, 87 Mo. 74; *Whitsett v. Ransom*, 79 Mo. 258; *Baker v. Stonebraker*, 36 Mo. 345; *Price v. Evans*, 49 Mo. 396; *Garrett v. Greenwell*, 92 Mo. 120; *State v. Prim*, 98 Mo. 372; *Clark v. Fairley*, 30 Mo. App. 335; *Freeze v. Fallon*, 24 Mo. App. 44. But, in order to do this, the testimony and surrounding circumstances must be such as to raise the strongest inference that such was the case. *Jackson v. Railroad*, 29 Mo. App. 500. In view of the evidence of the age and wage-earning capacity of the deceased, we must think the verdict was exceedingly moderate.

The defendant strenuously insists that the verdict cannot be sustained, unless the facts are established by direct evidence, or by inference naturally and reasonably deducible from such established facts, that the foot of deceased was caught in the frog, and that while in that position he was run over and killed by defendant's train. It is conceded here, that defendant had neglected to block the frogs in its yards as required by statute. R. S., secs. 2627, 2628. The only question of fact which we are now to consider is, was the death of plaintiff's husband occasioned by his foot being caught in the defendant's unblocked frog? It is further conceded that no one saw the deceased at the moment he was injured. Do all the facts and circumstances, established by the evidence, justify the inference that the foot of the deceased was caught in the frog in question? We think this is so, and that it can be demonstrated by a bare reference to the pertinent facts and circumstances of the case. On the night when the plaintiff's husband was last seen alive he was coming down the ladder on the west end of a stock car, to the east end of which was attached a switch engine, which was pushing the car

westward. He was descending the ladder for the purpose of coupling the stock car, on which he was riding, with a string of cars further west. The ladder was between the bumper and the north side of the car, and directly over the north side of the track. The east end of the cars, to which the coupling was to be made with the stock car, stood about ten or fifteen feet east of and over the frog in which, plaintiff claims, one of her husband's feet was caught while making the coupling. The switch with which this frog was used was distant east about thirty feet. The signal to slow up the engine and stock car, at the point where the coupling was to be made, which was down grade, was tardily given, and the result was an unusually sharp collision when the cars met, moving off the standing cars further west. It is not disputed that, immediately after the cars met, they moved further west without any signal for that purpose being given. If the coupling of the cars was made by deceased, but not at the instant they met, then it must have been done later while they were in motion. If done while they were moving west, it was necessary for him also to move in the same direction, and two or three steps would have brought his feet to the locality of the unblocked frog. No one saw the coupling made. Deceased was ordered to make it, and was last seen descending the ladder of the car as it approached the point where it was to be made, and, as it was subsequently made, the inevitable inference must be that he made it. It appears there were three places in the frog where the foot of the deceased might have been caught, if he walked from where the cars met west to where the frog was located. The shoe that was found on one of his feet was torn around the heel and vamp, and there was also a corresponding laceration of the flesh of the foot. These, with other facts and circumstances, we think, justify the inference that the heel of the deceased was caught in the frog while he was on the railway track for the purpose of making the coupling.

In *Peck v. Railroad*, 31 Mo. App. 123, it was remarked that, "Whenever, from all the facts and circumstances in evidence, a jury may, without doing violence to the dictates of reason and common sense, infer a given fact on account of its known relation to the facts proved, the court should not interpose its own different conclusion." The verdict in this case can be supported only upon the assumption that the jury inferred from the facts and circumstances proved by the evidence the further fact that the foot of the deceased was caught in the frog, and that this caused his death. In *Frost v. Brown*, 2 Bay (S. C.) 133, it was said that a single circumstance may have little strength, and of itself afford no foundation; but when joined to many more of the same nature, all fitting each other, having the same relation, the whole united may form an arch strong enough to support a presumption of the most important fact. It is a familiar principle of the law of negligence that, whether a person, injured by the negligence of another, was exercising ordinary care, is a question for the jury to determine, either when there is a dispute, or a reasonable doubt, as to the inferences to be drawn from the undisputed facts. Wharton on Neg., sec. 425 ; *Norton v. Ittner*, 56 Mo. 352 ; *Mauerman v. Siemerts*, 71 Mo. 105 ; *Nagel v. Railroad*, 75 Mo. 653 ; *Wyatt v. Railroad*, 55 Mo. 485. And no reason is perceived why these rules are not applicable in a case like this.

The theory of the defendant, that the deceased came to his death by falling from the ladder of the car on which he was riding, we cannot think the most reasonable one, in view of all the facts and circumstances of the case. Some time after the body of the deceased was found, and after the car on which he was riding when last seen alive had been moved backwards and forwards a number of times, an unlighted lantern answering the description of that used by deceased, was found on the top of the car lying on its side. This, it is contended, is

a circumstance showing that deceased did not get down from the ladder on the ground to make the coupling, but fell from the car. We do not think this circumstance authorizes this inference. If he had the lantern in his hand or on his arm, and fell from the car, it would have gone down with him. It is quite as probable that, while standing on the ladder preparatory to making the coupling, he set his lantern down on the top of the car to get its reflected light from there while making the coupling. It is not improbable that when the cars collided, or in the subsequent movements, it was turned over and extinguished. The place where the body of deceased was found, the blood stains along the rail on either side of the frog, the wounds on his body, the condition of his shoe, his position on the ladder just preceding the coupling, the coupling made of the cars, and the other facts and circumstances shown by the evidence, we think, furnish a base broad enough and strong enough to support the inference that he came to his death in the manner, and by the means, alleged in the petition. This, it is true, may be the subject of reasonable doubt; at all events it was a question to be solved by the jury, and its determination cannot be interfered with by us. Thompson on Trials, sec. 2290. There was no question of contributory negligence in the case. Secs. 2627, 2628, *supra; Huhn v. Railroad*, 92 Mo. 440. The rules offered in evidence, for this reason, were properly excluded. The instructions given by the court fairly presented the whole law applicable to the case. No error is perceived in the action of the court in refusing the requests of the defendant.

The judgment will be affirmed. Judge GILL concurs; Judge ELLISON dissents.

ELLISON, J. ( *dissenting* ).—It can serve no useful purpose for me to go into a discussion of details of the facts or law of this case. But a few conceded physical facts, in my opinion, settle the cause against plaintiff.

It is agreed all round that to establish the case plain·
tiff must show that deceased ( who is an employe ) came
to be knocked down, run over and killed by getting his
foot caught in the frog. Now his body was found *fif-
teen feet east* of the frog, and the cars were moving
*west*. The opening or diverging part of the frog ( which
may be likened to a boot jack) was to the west, and if
the tear on the heel of the shoe was caused by being
pulled or forced out of the frog, he must have been
knocked down and run over by cars moving east. But
it is said that after the cars were brought in to be
coupled and had moved on west, they were moved back
and forth several times before deceased was discovered
to have been killed, and, that though his body
was found fifteen feet east of the frog, it was dragged
there as the cars came back. This does not explain
the matter, for there was no evidence or appearance,
in my opinion, of the body having been dragged ;
and, furthermore, the body was completely severed
about the middle, the lower portion lying straight
between the rails and the upper portion (lying straight )
just outside the north rail, and showing no evidence of
having been dragged. If deceased was killed at the frog
under the cars fifteen feet away, it is beyond compre-
hension how the upper portion of his body could be in
the condition it was, at the place it was, *outside the
rails*.