Davis v. Commonwealth.

CASE 114—INDICTMENT—FEBRUARY 19.

## Davis v. Commonwealth.

APPEAL FROM LIVINGSTON CIRCUIT COURT.

1. INDICTMENT FOR SEDUCTION.—An indictment under section 1214 of the Kentucky Statutes for the offense of seducing a female under twenty-one years of age under promise of marriage need not allege that either the defendant or the woman seduced was unmarried, it being sufficient that the indictment should follow the language of the statute.

2. A MARRIED MAN MAY BE GUILTY OF THE OFFENSE if the woman seduced was ignorant of his existing marriage. Whether he may be guilty if the woman knew him to be a married man does not seem to be determined. Nor is it decided whether the offense may be committed with a married woman, it appearing from the evidence in this case that the girl seduced was unmarried.

JNO. K. HENDRICK, C. C. GRESHAM AND J. C. HODGE FOR APPELLANT.

1. To constitute the offense for which section 1214 of the Kentucky Statutes prescribes a punishment both the man and the woman must be unmarried and the indictment must so allege. (Commonwealth v. Wright, 16 Ky. Law Rep., 251.)

2. The court erred in its instructions to the jury.

It was proper to tell the jury that if the intercourse was accomplished by force then they must acquit. (State of Iowa v. Lewis, 30 Am. Rep., 407.) But it was prejudicial error to go further and tell them that they must acquit because in that event the defendant was guilty of rape.

Davis v. Commonwealth.

WM. J. HENDRICK, Attorney-General, for appellee.

The charge is abundantly proved by the prosecuting witness and her friends and the court instructed the jury on every. phase of the case most favorably for the accused.

JUDGE GRACE delivered the opinion of the court.

This is an appeal by Jno. W. Davis from a judgment of the Livingston Circuit Court convicting him of the crime of seduction and sentencing him to confinement in the State prison for two years and six months as a punishment for said offense. The statute under which this indictment was laid and conviction had may be found in section 1214, Kentucky Statutes, and is as follows, viz.:

"Whoever shall, under promise of marriage, seduce and have carnal knowledge of any female under twenty-one years of age, shall be guilty of a felony, and, upon conviction thereof, shall be confined in the penitentiary not less than one year nor more than five years. No prosecution shall be instituted when the person charged shall have married the girl seduced; and any prosecution instituted shall be discontinued, if the party accused marry the girl seduced before final judgment. All prosecutions under this section shall be instituted within two years after the commission of the offense."

The indictment, omitting the formal part, "accuses John W. Davis of the crime of seducing, under promise of marriage, a female under twenty-one years of age, committed as follows, viz.: That the said John W. Davis, in the county of Livingston, on the 2d day of June, 1895, and before the finding of this indictment, did unlawfully, under promise of marriage, seduce and have carnal knowledge of Mamie Martin, a female under twenty-one years of age, against the peace and dignity of the Commonwealth of Kentucky."

Two objections are urged by counsel for defendant to this indictment and to his conviction thereunder.     First, they say that it should have charged that at the time of the commission of this offense he *was an unmarried* man; and, second, that the party seduced and injured was an unmarried female.

The argument in support of this theory is that, inasmuch as the statute provides for the condonement of the offense, provided the party offending shall marry the party injured before judgment, this implies in all cases the possibility of avoiding the punishment fixed by the statute by contracting and solemnizing this marriage, and hence that this implies that both parties must be unmarried and so enabled to bring themselves within the condoning clause of the statute.

In this we think counsel confuse the clause providing for this condonement on certain conditions with the commission of the offense charged, and with the punishment declared against it by law.

The statute is general and universal in its terms that "*whoever*, under promise of marriage, shall seduce and have carnal knowledge of *any female* under twenty-one years of age" (in like general and universal terms), shall be punished, etc.

The statute is not limited as to the state or condition of the man who commits the offense as to whether he is married or unmarried.   It does not say after declaring that *whoever* shall commit this offense shall be punished, etc., and then provide that this statute shall not apply to any married man.   Considering that it is the virtue and chastity of the female under twenty-one years of age that is sought to be protected by this statute, it would be a most singular confusion of moral precepts to say that this wrong, if committed by a married man, is no wrong and no offense, while in truth

Davis v. Commonwealth.

it implies not only the same ruin and disgrace to the unoffending female, but greater moral turpitude in the man in the fact that he is a married man, and thus commits the double offense, not only in the ruin of his victim but in the violation of his own sacred marital vows as well. He not only violates the statute under consideration, but he violates other statutes seeking to punish him for the violation of his own marital vows.

While this statute may be said to be based upon and laid out on the line of the early English statutes which took cognizance of the same character of injury and sought by appropriate punishment to remedy same, yet all these offenses are supposed to be purely statutory. It is questioned whether, according to the ancient common law, *disconnected* with any *conspiracy* to ruin the virtue of the female and *disconnected with force used* to accomplish the purpose, it was an offense.

True, some of the States did hold the early English statutes as being a part of the common law and enforceable in their respective jurisdictions as such. Among these we notice Maryland, South Carolina and Massachusetts.

Other States seemed to ignore these statutes as a part of the common law, and we are not aware that these early English statutes, commencing with 8 Phil. & M., passed in 1557, have ever been held applicable in Kentucky. The whole proceeding here seems to be embraced and made a statutory offense.

Mr. Bishop says that so general have statutes on this subject become in the several States that it is now a matter of no practical importance whether it should be regarded a common-law offense. (Bishop on Statutory Crimes, sec. 630.)

Of these statutes in the several States we find them widely variant. The early English statute, like the present Ken-

tucky statute, was general as to the person committing the offense, and said that "it shall be unlawful *for any person* (not for any unmarried man) to take and convey away," etc.; and Mr. Bishop cites English cases under this statute holding that the offense might be committed by a married man as well as by a single person. (Wild v. Harris, 7 C. B., 999; and Millward v. Littlewood, 5 Exch., 775; 1 Eng. L. & Eq., 408.) And the same author cites a New York statute similar to this one, in providing that *any man* who shall, under promise of marriage, seduce, etc., and, referring to the case of People v. Alger, 1 Parker, 333, says: "And it has been held that as an element in the offense *an apparently valid* promise of marriage between the seducer and the seduced is necessary; therefore, where the man is married, living with his wife, and the woman knows it, his act of seduction is not within the statute. *If she were ignorant of his subsisting marriage, the consequence would be otherwise;* because the promise would then be binding on him to the extent of enabling her to maintain against him her civil suit for its breach." (Bishop on Statutory Crimes, sec. 638.)

This seems to be the extreme limit that any court has undertaken to engraft on the statute conditions not placed therein by the legislature. This limit was given the defendant on the trial of this cause.

The court instructed the jury that if the accused was a married man at the time of this seduction, and if the prosecutrix, Mamie Martin, had knowledge of that fact, then the law was for the defendant, and the jury should acquit.

Again, we find in a Missouri case (State v. Primm, 98 Mo., 368), that the court held, under a statute similar to ours, in providing *that if any person* shall, under promise of marriage, seduce, etc., it was unnecessary to charge in the indictment

that the defendant was an unmarried man at the time of the commission of the offense.

As before said, the statutes of the several States are widely variant. We notice the Wisconsin statute: *"Any unmarried man* who, under promise of marriage, or any married man who shall seduce," etc. here embracing by express provision both classes, and yet not more comprehensive than the Kentucky statute, that provides *that if any person,* or rather *"whoever shall,"* etc.

We find the Indiana statute similar to the Kentucky statute. It provides that if any person shall entice or take away any female of previous chaste character, from wherever she may be, to any house of ill-fame or elsewhere, for the purpose of prostitution, and every person who shall advise, assist, etc., shall be punished, etc.; and under that statute the following indictment was held good: "That A B, etc., unlawfully and feloniously took away one C D, a female of previously chaste character, from the town of Bloomington, in said county, to the town of Bedford, in the county of Lawrence, in the State of Indiana, for the purpose of having illicit sexual intercourse with the said C D, contrary," etc.

Here it will be seen that it was neither charged in the indictment that either the man offending or the woman injured were unmarried, doubtless because neither of these conditions was stipulated in the statute as being necessary to constitute the offense. The indictment did charge that the woman was previously of chaste character—this being embraced in the statute as descriptive of the character of the female sought to be protected by this statute.

Some States specify, as this Indiana statute, that the person seduced and injured must have been previously chaste and virtuous. In all such cases doubtless the indictment must follow the statute. In this case the court below also

gave to the accused the benefit of this principle, doubtless holding the previous chaste character implied in the word seduction.

Other statutes prescribe the testimony sufficient for a conviction, as that the testimony of the prosecutrix must be corroborated by other evidence similar to that sufficient to support an indictment for perjury.

Some States do not provide, as in Kentucky, for any condonement of the offense by the marriage of the parties. Others yet have a similar provision, and yet others go beyond this condition of marriage and say, if the offending party marries, *or in good faith offers to marry the injured party,* that in this way the offense may be condoned; and this principle was by this court, in the case of Commonwealth v. Wright, 16 Ky. Law Rep., 251, extended beyond the letter of our Kentucky statute, the court holding that where *the accused offered to marry the injured party* it was sufficient. And while this case is quoted by appellant in support of his present contention, yet it has no application other than as quoted.

The indictment in the Wright case is the same as in this case, simply accusing the defendant, Wright, with seduction under promise of marriage, etc. It does not charge that Wright was an unmarried man, neither that the party seduced was an unmarried female, but only that she was under twenty-one years of age. True the facts showed both parties to have been unmarried, but the indictment did not so charge, neither did the court so hold. True the court spoke of the party injured as unmarried, but not to hold that that was a necessary part of the indictment.

The original English statutes, as well as the statutes of many of the States, provided that the party injured must be a female under sixteen years of age, *and unmarried.* When

the statute so prescribes doubtless the indictment must follow the statute and describe the female as within the age *and unmarried,* but this necessity of so declaring in the indictment is simply and only because the statute has so declared.

In the statute under consideration there is no such requirement, the only condition being that the party injured must be a *female under twenty-one years of age,* and this condition was in this case alleged in the indictment.

Speaking of these statutory offenses, and of the indictment to be found under same, Mr. Bishop, quoting Metcalf, J. in Commonwealth v. Welsh, 7 Gray, 327, says that a fair statement of the rule may be that "a charge in an indictment may be made in the words of a statute, without a particular statement of the facts and circumstances, when, by using those words, the act in which an offense consists is fully, directly, and expressly alleged, without any uncertainty or ambiguity." (Bishop on Statutory Crimes, sec. 378.)

We fail to find in this indictment any want of conformity to this rule. In fact it is drawn in the exact words of the statute, so that if the legislator knew the persons he intended to punish for this offense, then the indictment may be said to be good.

Again, Mr. Bishop says that every indictment should be drawn with the statute before the attorney for the State, and that an indictment should be not encumbered with *allegations beyond the terms of the statute;*" and, again: "Always employ the exact words of the statute, and do not experiment with other words which you may deem sufficient as substitutes." (Bishop on Statutory Crimes, sec. 386.)

Again, he warns the attorney for the State that "it can not be too often urged, as a matter of practical advice, that the pleader do not try experiments of this kind."

These general doctrines from this author should be suffi-
cient to uphold the indictment as found in this case.   But
when we look to the requirements of our own Code, section
122, we find that the indictment should contain a statement
of the acts constituting the offense, in ordinary and concise
language, and in such a manner as to enable a person of com-
mon understanding to know what is intended, and with such
degree of certainty as to enable the court to pronounce judg-
ment on conviction according to the right of the case; and
then again, by section 124, the indictment must be direct and
certain, as regards:

1. The party charged.

2. The offense charged.

3. The county in which the offense was committed.

4. The particular circumstances of the offense charged,
if they be necessary to constitute a complete offense.

All these requirements have been scrupulously observed.
But accused says:   "I can not avail myself of the provisions
for condoning this offense by marrying my victim because
I already have *two wives living and undivorced*, therefore, this
statute does not apply to me."

It seems to this court sufficient, in law as well as in mor-
als, to say to the defendant that he should have thought of
this thing before he violated the law by the seduction of his
victim.   That he can not condone the offense or avoid the
punishment is no excuse why he should have violated the
law.

Again, all this contention about the female seduced being
an unmarried female, and about the statute only intending
to punish one for seducing an unmarried female is a mere
clamor.   In fact the girl seduced was unmarried and not
fourteen years of age, even at the time of the trial.   It will
be quite time enough to determine whether this statute is

applicable to any other than an *unmarried female when such a state of fact is presented to the court.*

If the court must so far revise this law as to insert conditions not embraced by the statute, let it at least wait until a case is presented wherein such an interpretation would be applicable.

To undertake to so declare now, in advance, and to reverse this case because the indictment did not embrace provisions in it not embraced in the statute, and, worse still, not presented by the facts of this case, would be to utterly ignore that provision of our Code which provides that "no judgment of a lower court shall be reversed on appeal except for errors of law appearing on the record, when upon consideration of the whole case the court is satisfied that the substantial rights of the accused have been prejudiced thereby."

The facts of the case given in evidence clearly and abundantly sustained the finding of the jury.

Judgment affirmed.