MATILDA MORRIS, Respondent, v. JAMES BARNES, ADM'R OF JOHN BARNES, dec'd, Appellant.

1. *Practice—Verdict.*—Where the verdict is entirely unsupported by the evidence, the Supreme Court will set it aside.
2. *Contract.*—Where services are rendered and received without any expectation of payment, no claim can be preferred therefor.

*Appeal from Livingston Circuit Court.*

The facts are sufficiently stated in the opinion.

*R. D. Ray*, for appellant.

The verdict of the jury was clearly against both the law and evidence in the cause, and wholly unauthorized by either. (19 Mo. 433; 1 Pars. Contr. 530, § 1; 14 Wend. 209; 5 Cow. 531; 20 Barb. 387; see Stat. Limit., 2 vol. Mo. Stat. 1048, § 3.)

*A. M. Woolfolk* and *S. Turner*, for respondent.

DRYDEN, Judge, delivered the opinion of the court.

The instructions given by the Circuit Court put the case to the jury as favorably for the appellant as he could ask. So far then as giving or refusing instructions is concerned, we could find no warrant for interfering with the judgment, but the verdict is, in our view, so glaringly against the evidence, that we are constrained to send the case back for a new trial. In doing this we do not violate the rule this court has long and uniformly acted on; not to interfere with a verdict merely on the ground that it is against the weight of the evidence.

The sense of the rule is that the court will not weigh the testimony with nicely balanced scales and decide upon a bare preponderance of the evidence. But this by no means implies a denial of the power which this court undoubtedly possesses of ordering a new trial, when the Circuit Court refuses to grant one on the sole ground of the verdict being against the evidence. (Hartt v. Leavenworth, 11 Mo. 629.) It is a power, however, that ought to be exercised with great caution, and only in very clear cases.

The proceedings in the case originated in the Probate Court of Livingston county, on the following demand exhibited for allowance against the estate of John Barnes, the appellant's intestate, viz:

" Estate of John Barnes, dec'd, to Matilda Morris, Dr. To 21 years' continued services from the fall of 1863, after allowing full credit for board, clothing, &c., furnished gratis, $1,575. Balance due, $1,575."

There is no dispute that the plaintiff lived in the family of the defendant's intestate, performing much valuable domestic service, from 1842 till the death of the intestate in 1863, except during an interval of about two years, while the intestate was a widower. The question in the case was as to whether the plaintiff's services were rendered upon an implied contract of hiring (for there was no evidence of any express contract) or as a mere gratuity.

The evidence shows that the plaintiff is a deaf mute; that her parents died in Tennessee in 1842, leaving the plaintiff (then about nineteen years of age) poor and destitute; that John Barnes, the intestate, who was her half brother, living some twenty miles distant, shortly after the death of her parents, took her into his family; that John, while residing in Tennessee, was a poor man, owning neither land nor servants, depending for support of himself and household on the fruits of his daily toil as a mechanic; that in 1846 he moved to Missouri with his family, the plaintiff being of the number, where he resided until his death; that for a period of about two years, from 1851 to 1853, Barnes being a widower suspended house-keeping, and during the interval the plaintiff went and resided with Capt. Barnes, a brother of John and half brother of plaintiff, in the mean time taking with her and caring for the infant child of John. On John's marrying a second time and resuming house-keeping, the plaintiff asked leave to be permitted to return to his house, and leave being given she accordingly returned; that with the exception of the two years she spent at Capt. Barnes' the plaintiff was an inmate of John's family, from the death of her parents until about a month after the death of John, when she went to a brother of the whole blood. For several years after John came to Missouri, he continued poor and unable to buy land, but that before his death his circumstances had improved.

It is conceded on all hands that the plaintiff was a good, faithful girl, and did all the work of the family usually performed by a domestic; that while she was thus faithful to

the family, she in return was regarded and treated by them with affection and kindness, being treated more as a sister or daughter than as a servant, and that she looked to and received from John the supply of all her wants.

The evidence further shows that the services rendered by the plaintiff at all times exceeded the expenditures of John upon her. No accounts were kept between the parties, so far as appears. Mrs. Barnes, widow of John, testified that "upon my marriage the plaintiff came back and made her home at our house; she said that she had rather live with John Barnes than with any of her other relations. She came there of her own accord, and remained as a matter of choice." This witness in these statements is confirmed by several other witnesses who are entirely free from any interest in the case. Some of the witnesses (and there were many examined) testified to facts unknown to others, but except upon the question of the relative value of the services of the plaintiff, as compared with her expenses, there was nothing like any conflict in the evidence.

The whole drift of the evidence showed almost irresistibly that the plaintiff chose to reside with the deceased because she found in him an affectionate brother and kind protector, and not for the sake of any reward; and that, on the other hand, he received her into his family from a high sense of duty to a stricken and afflicted sister, and not from any considerations of profit or gain to himself; and that neither ever had any expectation of making any charge for any service rendered to the other. If these were the motives that brought the parties together and the terms on which they served each other, then the verdict is without any legal support. Nothing is better settled in the law than that where services are rendered by a party, without any purpose of demanding compensation, and are accepted with that understanding by the party receiving the services, no claim can thereafter be preferred therefor. The only theory upon which I can account for the verdict in view of the evidence, is that the jury allowed their feelings of compassion for this afflicted

woman, to mislead their judgments and to blind their minds to the facts proved in evidence.

The Circuit Court erred in refusing to set aside the verdict and grant a new trial in the case, and for this cause its judgment is reversed and the cause remanded.    Judge Bay concurs.