JOHN BAKER, Plaintiff in Error, v. JOHN STONEBRAKER et al., ADM'RS OF JOHN S. STONEBRAKER, Defendants in Error.

1. *Judgment—Payment—Limitations.*—The lapse of a period of time of less than twenty years, with additional circumstances tending to prove payment of a judgment, may induce a presumption of payment, and authorize a jury to find the fact of payment; the presumption being stronger or weaker according to the length of time elapsed.

2. *Practice—New Trial.*—The Supreme Court will not disturb a verdict on the ground merely that it is against the weight of evidence, unless it can be seen that the preponderance is so great as to imply some gross partiality, or some prejudice or misconduct on the part of the jury.

3. *Conflict of Laws—Foreign Judgment—Limitations.*—Where the statute of limitations of the State in which a judgment is recovered operates to extinguish the contract or debt itself, the case no longer falls within the law of limitation of the remedy ; and when such judgment is sued upon in another State, the *lex loci contractus*, and not the *lex fori*, is to govern.

*Error to Montgomery Circuit Court.*

*E. A. Lewis*, for plaintiff in error.

I. The court erred in admitting evidence as to John Stone-

braker's business habits and character. Such testimony is never admissible in a civil case, unless the character or habits of the party are directly in issue. No exception is allowed to this rule in suits on contract, even where it might repel an imputation of fraud. (Gough v. St. John, 16 Wend. 646, 653; Attorney General v. Bowman, 2 Bos. & Pul. 532, note *a.*; 1 Greenl. on Ev. § 54; Lander v. Seaver, 32 Vt. 114, 124; Jacobs v. Duke, 1st ed. Smith, 271; Church v. Drummond, 7 Ind. 17; Jeffries v. Harris, 3 Hawks, 105; Humphries v. Humphrey, 7 Conn. 116; Anderson v. Long, 10 Serg. & R. 55; Nash v. Gilkerson, 5 *id.* 352.)

II. The evidence was calculated to mislead the jury. It is not only possible, but highly probable, that it constituted the real reason for their verdict. All the "circumstances" thus standing on an equal footing, or at least nearly so, it is impossible to tell which one operated effectually to produce the verdict. And in such cases the rule is universal, that if any one of such facts or circumstances was improperly submitted to the jury, the verdict must be set aside. (Ellis v. Short, 21 Pick. 142, 145; Clark v. Vorce, 19 Wend. 232; Dresser v. Ainsworth, 9 Barb., S. C. 625; State v. Allen, 1 Hawks, 6; Anthorne v. Coit, 2 Hall, 40.) And this ability to pay is not only denied any tendency to raise a presumption of payment, but has been held even to favor the contrary presumption, especially when taken in connection with the lapse of time; for the fact of the debtor's abundant means might constitute the very reason why the creditor had no fear of losing his debt, and hence forebore to sue. The defendant's willingness to pay, as deducible from his business habits, falls within the same category, besides being inadmissible from other considerations. Hence, all this testimony in the case fails to furnish any foundation for the instruction. (Rogers v. Burnes, 27 Penn. 525; Hilton v. Scarborough, 5 Gray, 422; Fleming v. Rothwell, 5 Harring, 46; 1 Phil. Ev., C. H. & E., 677.) The issuance or existence of the execution, whether returned or not, is, in the absence of a levy, entitled to no consideration, with

reference to the presumption of payment; for, 1. There was in fact, no legal evidence of its existence—the mere historical statement certified by the clerk, without an exemplification of the execution itself, not being sufficient or admissible—(Cornelison v. Browning, 9 B. Monroe, 50; Drake v. Merrill, 2 Jones, Law, 368; Barry v. Rhea, 1 Overt. 345); and, 2. If it be claimed that there is sufficient proof of the loss of the execution to admit this secondary proof of its existence, then the very fact of its loss repels the presumption of payment as a legal conclusion. (Peck v. Barney, 12 Vt. 72; Peck v. Tiffany, 2 N. Y., Comst. 456; Thomas v. Cleveland, 33 Mo. 126; Blackburn v. Jackson, 26 Mo. 308; Radde v. Whitney, 4 E. D. Smith, 378.)

III. The court erred in overruling the motion for a new trial. The verdict was so palpably against the law and the weight of evidence as to justify the interference of the Supreme Court to correct the error. Every possible presumption of payment that could be extracted from the testimony was legally and conclusively repelled, leaving nothing to justify a verdict in favor of the party upon whom the burden of proof rested. (1 Phil. Ev. 677; Woodbury v. Taylor, 3 Jones, Law, 504; Boardman v. DeForest, 5 Conn. 1; Dagget v. Tallman, 8 Conn. 168.)

*Dyer & Orrick*, for defendants in error.

I. A shorter period of time than twenty years, together with additional circumstances tending to prove payment, may go to the jury and constitute a presumption of payment. (1 Phil. Ev. 677, and cases there cited; 2 McCord, Ch. 435; 2 Wash. C. C. 323; 3 McCord, 340-41; 1 *id.* 146-7; 8 Wend. 443; 7 Iowa, 224, 231; 9 Serg. & Ra. 379; 4 Wend. 483; 12 Vt. 72.)

II. The business character of John Stonebraker for accuracy or carelessness in his transactions, as disclosed by the testimony, was such a circumstance as might be considered by the jury with reference to the presumption of payment. (2 Grant's Cas. 77; 1 Greenl. Ev., § 39; 9 Watts, 442; 4

Penn., Munf. 429; Ross v. Dailey, 1 Esp. 297; 20 Texas, 706; 2 Head, Tenn. 405; Fleming v. Rothwell, 5 Harr. 46, Del.; 1 Phil. Ev. 612.)

III. At most, the testimony was only irrelevant, and it is the uniform rule of superior courts not to reverse for irrelevancy of testimony unless it was calculated to mislead the jury. (29 Mo. 199; 3 Texas, 493.)

HOLMES, Judge, delivered the opinion of the court.

This suit, commenced in the St. Charles Circuit Court at the June term, 1859, and transferred by change of venue to the Montgomery Circuit Court, was founded upon a record of a judgment rendered upon confession in the county court of Washington county in the State of Maryland, on the third day of February, 1840, for $1,230.75 debt, together with interest and costs, with a stay of execution for one year, in favor of George McCulloch against John Stonebraker ; and it was afterwards assigned to John Baker, the plaintiff herein.

The answer set up the defence of payment. There was a trial by jury, and the defendant had a verdict. The plaintiff's motion for a new trial was overruled, and the case is brought up by writ of error.

It appeared in evidence on the part of the defendants, who had the affirmative of the issue, that, on the 26th day of February, 1841, an execution was sued out upon this judgment and placed in the hands of the sheriff, but that he never made any return thereof ; that on the 20th day of April thereafter, John Stonebraker, the defendant, made an assignment of all his property, real and personal, amounting to some eighty thousand dollars, to trustees for the benefit of his creditors, " without priority or preference except as the same exists by law" ; that in the fall of 1843 John Stonebraker came to Missouri and settled in the county of St. Charles, bringing with him some $1,500 or $2,000 worth of property, and that he was ever afterwards prosperous in business, was worth $5,000 in 1849, had several farms and

much valuable stock in 1855, of the value of $10,000 at least, and died in 1859 at the age of seventy-two, leaving an estate worth $25,000; that in respect of business habits and character he was rather "loose and reckless," was "very communicative" and did business with a rush," but that at any time after he came to this State he was well able to have paid this debt; and that the plaintiff's attorney in Maryland was a vigilant collector, and knew where Stonebraker resided in Missouri, and was acquainted with his circumstances and the fact that he had made a good deal of money.

On the part of the plaintiff, it appeared further that the suit had been conducted by an attorney resident at Hagerstown, in the county of Washington, State of Maryland, who had sued out the execution on this judgment and placed it in the hands of the sheriff of the county, but that he never saw it afterwards; that the trustees took charge of the property assigned and proceeded to settle up the business; that some time afterwards, the attorney made inquiry of one of the trustees, and was informed that there were sufficient claims having priority against the property assigned to exhaust the whole of the proceeds, and he did not suppose that anything would be paid on said execution; and the attorney states that no money was ever made on the same that came to his knowledge. He further stated that the sheriff had since died, and that he did not know what had become of the execution. The attorney in St. Charles testified that, after he had taken charge of the claim for collection, in 1859, he conferred with John Stonebraker on the subject, who denied that he was the man, and suggested that there was another man of that name in the State of Maryland, and that, afterwards, on being told what evidence had been obtained of his identity, he still denied that he was the man, but never intimated that he had paid the debt.

An extract from the bill of rights of the State of Maryland, showing that the people of that State were entitled to the benefit of the common law and the statutes of England

existing at the time of their first emigration, and found applicable to their circumstances and to such other British statutes as had since been introduced, used and practised in the courts of law and equity, and to all acts of Assembly in force on the first day of June, 1774, except such as had expired or had been altered by subsequent legislation, was agreed to be considered as a part of the evidence.

The court gave the following instructions for the defendant:

"The jury are instructed that a less time than twenty years, together with additional circumstances tending to prove payment, may be considered by the jury as ground for a presumption of payment."

All the instructions asked for by the plaintiff were given ; they were consistent with that for the defendant, were quite favorable to the plaintiff, and need not be further noticed.

An exception was taken by the plaintiff's counsel to the admission of testimony, tending to show what were the general business habits and character of the defendant ; and the witnesses were allowed to state that he was in general "loose and reckless," doing business "with a rush." The rule is well settled, as insisted on the part of the plaintiff, that in civil cases, where the character of the party for honesty and integrity is not put in issue by the pleadings, evidence bearing upon reputation and character of that kind is inadmissible ; but such was not the nature or the object of this testimony. It concerned only the business habits of the party as one circumstance, with all the rest, which, as tending to show his general mode of doing business, might have a bearing upon the question of payment, which was the subject of inquiry. The admission of irrelevant testimony may sometimes be a ground of error, where it can be seen to have influenced the minds of the jury unfavorably to the party objecting ; but even if this testimony could be considered as irrelevant, or immaterial, we do not see any good reason to suppose it may have been prejudicial to the plaintiff. The habit and mode of dealing of the parties with

one another have been held to be a proper subject of inquiry in these cases. To some extent, the general business habit and character of the defendant, as a careful and punctual, or a loose and reckless man, in his business affairs, might be said to have a bearing, though remote, upon the presumption of payment. We are not required to say it would be sufficient in itself, nor can we say it was wholly irrelevant, taken in connection with the other circumstances of the case, or that it was improperly allowed to go to the jury for what it was worth. We are rather inclined to think it made more in the plaintiff's favor than against him. The jury were to draw their conclusion from all such facts and circumstances as might constitute a fair ground of inference as to the main fact under investigation, according to the ordinary course of human reasoning and the common experience of mankind of the natural and moral relations and connections of things. We cannot say there was any such error in this ruling as would justify us in reversing the judgment on this ground alone.

The instruction which was given for the defendants correctly laid down the general rule of law on the subject. A presumption of payment, as matter of fact, may arise from a great lapse of time, falling short of the full period prescribed by statute as a ground for a conclusive or a disputable presumption of law, taken together with other additional circumstances tending to show payment, as furnishing circumstantial and presumptive evidence and a basis of fact proved, from which a jury may be warranted in inferring the fact of payment. (Winstanly v. Savage, 2 McCord, ch. 435; Goldbank v. Duane, 2 Wash. C. C. 323; Blake v. Ouart, 3 McCord, 340; Ross v. Dailey, 4 Munf. 428; Thompson v. Thompson, 2 Head, Tenn. 405; 1 Greenl. Ev., § 39; 2 id. § 328; 1 Phil. Ev. 677 & note.) It is well settled also, that when there is some evidence of this character which is competent to go to the jury, it is a question of fact for the jury to decide. (Fleming v. Rothwell, 5 Harr. 46.)

The only question that remains is whether the evidence in

this case was sufficient in law to sustain the verdict. There were some circumstances which certainly tended to show payment, and there were some which had an opposite tendency. But where the evidence is conflicting, it is the peculiar province of the jury to weigh all the facts and circumstances together; and it has been often held, that the court will not disturb a verdict on the ground merely that it is against the weight of evidence, unless it can be seen that the preponderance is so great as to imply some gross partiality, or some prejudice or misconduct on the part of the jury. We cannot say that such has been the case here. Again, where there is some evidence before the jury which bears upon the issue, and covers the whole issue, it is a matter for the jury to determine, and the court will not interfere, except in very extraordinary cases; but where it can be said that there is no evidence on which the jury could be authorized upon any rational principles, or according to the ordinary course of human reasoning and experience, to infer the fact in issue, a new trial will be granted. We cannot say that this is such a case.

At the date when the execution was issued on this judgment, it appears that the defendant Stonebraker had some eighty thousand dollars' worth of property, real and personal. It is true that, about two months afterwards, he made an assignment of all his property for the benefit of his creditors, whence it might be inferred that at the date of the execution he was already in failing circumstances; but it still remains true that, at that date, he was the owner of a large amount of real and personal estate. It is a part of the evidence, that the common law of England prevailed in Maryland, and by that law an execution was a lien upon personal property and bound the defendant's goods from date of the *teste* against any subsequent sale or assignment. (2 Tidd's Pr. 1000 & *n*. A.) It does not appear that the sheriff made an actual levy, but his duty required him to do so, and if the debt were lost by reason of his failure to make a levy when it might have been done, he would be held liable for the

debt. He never made any return of this execution, and such failure of duty might render him personally responsible. It was argued that the certificate of the clerk was not evidence of this fact, but the body of the record shows that the execution was issued, and also that it had never been returned. This appears as an entry attested by the clerk; and the whole is then certified by the clerk, in the usual form, as a true copy of the record as the same remains in his office. It is thus made to appear as a part of the record itself. It appears also that the attorney of the plaintiff, who caused the execution to be issued at some indefinite time afterwards, made inquiry of one of the assignees, and was informed that there were other claims, having priority, sufficient to exhaust the funds, and he did not think there would be anything to satisfy this debt, and the attorney stated further that there was never any payment of this debt that came to his knowledge. These statements were entitled to very little weight. As to the assignee, it was mere hearsay, at best; he was himself a competent witness, and should have been called. The statement of the attorney amounted to nothing; for the debt may have been paid or compromised, and settled in some way without his knowledge. Here, then, was an execution issued and placed in the hands of the sheriff, which was a lien upon property apparently sufficient to have paid it, and on which no return was ever made by the sheriff. Nor does it appear that the sheriff was ever called upon to account for it, though the plaintiff and his attorney continued to reside in the State during all this long period of nineteen years and four months; at the same time, the defendant, though possibly insolvent while yet in Maryland, from the time of his coming to Missouri in 1843, had been at all times possessed of visible property real and personal, and amply able to have paid this debt if it had ever been demanded of him; and this fact must have been known to the plaintiff and his attorney in Maryland, yet no attempt is made to collect this judgment during this long period. We cannot but think that these were very strong circum-

stances, and entirely competent to go to the jury, in addition to the great lapse of time, from which they might be warranted in inferring that this judgment had been, in some way, settled and paid. It must be borne in mind that but very slight additional evidence could be necessary in this case. In eight months more, there would have been a payment by presumption of law, under the statute of this State, disputable only by proof of payment, or of some written acknowledgment of indebtedness, made within twenty years, of some part of the judgment debt, but conclusive otherwise. (R. C. 1855, p. 1053, § 16.) The presumption here had not quite become a presumption of law under the statute; it was still a presumption of fact only, arising from great lapse of time and the other facts and circumstances proved as circumstantial and presumptive evidence. (Best on Presumption, 12.) It is a new argument addressed to the minds of the jury, and need be only such as might, according to ordinary reasoning and the common course of human experience, operate a belief or moral conviction in their minds of the truth of the hypothesis. (1 Greenl. Ev., § 44.) The conclusion was to be drawn by the same process of reasoning as that which prevails in the ordinary affairs of life, from all the connection and relations of the facts proved, in ascertaining one fact from the existence of others, without the aid of any rule of law; and it fell within the exclusive province of the jury, who were only bound to find according to their conviction of the truth. (1 Greenl. Ev., § 48.) And where, as in this case, the time required for a conclusive presumption of law had nearly elapsed, very slight additional circumstances must be considered as sufficient to produce such conviction; for as the lapse of time is of greater or less extent, so will a greater or less force and weight of the evidence be required. (Henderson v. Lewis, 9 Serg. & Ra. 379.) The effect of lapse of time alone will be in proportion to the number of years elapsed, and the force of other circumstances that may be necessary must be measured on a diminishing scale; and as the full period

approaches, a proportionably less weight of additional evidence must be taken as sufficient. (King v. Cotter, 2 Grant's Cas. 77.) The jury have said that the facts and circumstances laid before them, after having been balanced and weighed in their judgment, have produced a moral conviction in their minds of the truth of the presumption, and turned the scale in favor of the defendants. We cannot say they have not judged aright.

It was urged that the fact of insolvency, the absence of the defendant from the State of Maryland, and some other circumstances, ought to be held sufficient to rebut the presumption of payment. It may be admitted that these facts had this tending, but still it was the province of the jury to weigh and decide. The defendant did not become actually insolvent until two months after the execution was issued, and if he were wholly insolvent afterwards, it could have been for a short time only; for it was fully proved that at any time after the fall of 1843 he was able to have paid this debt. In Dagget v. Tallman, (8 Conn. 168,) where the lapse of twenty years raised a *prima facie* presumption of payment, such presumption was held to be sufficiently rebutted by proof of continued insolvency and absence out of the State together. Here, the defendant was absent from the State, but the other and more important element of continued insolvency did not exist; and the fact that it was known where the defendant resided, and that he was not insolvent but possessed of ample property, might fairly be considered as in some measure rebutting or counter-balancing the contrary tendency of the mere fact of absence from the State. There were some other minor circumstances which might be considered as tending in opposite ways; but in view of the strong tending of the leading facts to strengthen the inference that might be drawn from the lapse of time by itself, we think this case is clearly distinguishable from that of Dagget v. Tallman, and some other like cases which were cited on behalf of the plaintiff, and that, on the whole, the additional circumstances proved brought the case sufficiently

within the rule of law laid down in the instruction. Nor can we say that the verdict was without evidence to sustain it, nor that it was against the weight of evidence.

There is still another ground which, upon the evidence contained in the record, may fairly be taken in aid of the judgment which has been rendered. The extract from the Maryland bill of rights shows that the people of that State were entitled to the benefit of the common law and the act of Assembly in force in June, 1774, among which was the statute of 1715, prescribing the limitation of actions and a period for a conclusive presumption of payment of judgment. It provided (1 Dorsett's Stat. of Md., p. 11, § 6) that no bill, bond, judgment, &c., of above twelve years' standing, should be "good and pleadable, or admitted in evidence," saving only a further space of five years to persons under certain disabilities or "beyond the sea." In the case of Carroll v. Waring (3 Gill & J. 491), decided in 1832, this act was held to be a positive and peremptory bar, so that not even an express acknowledgment of the debt would revive the remedy upon it, and the statute and the decision upon it are cited by Greenleaf as an instance of a conclusive presumption of payment as matter of law. (1 Greenl. Ev., § 39 & note 21.) The doctrine is well established, that where an act of this kind operated to extinguish the contract or debt itself, the case no longer falls within the law of limitations on the remedy merely. In such case, when the debt or judgment is sued on in another State, the *lex loci contractus*, and not the *lex fori*, is to govern. (Sto. Confl. of Laws, § 582; Huber v. Steiner, 2 Bing. N. C. 202.) These authorities admit a qualification, that "the parties are within the jurisdiction during all the period of the statute, so that it has actually operated on the case." This qualification is to be understood of cases where the statute itself expressly makes exceptions of the absence of the parties beyond the jurisdiction, in which case it would not operate on them. But where, as in this case, the statute makes no exception of the absent party, but is absolute in its terms,

23—VOL. XXXVI.

this qualification is inapplicable. (1 Smith's Lead. Cas. 368.) Here the exception was only of the persons owning the judgment, and it appears that they did not come within the saving clause. The statute then operated upon this plaintiff and his judgment, and declared the debt conclusively barred, paid, and extinguished, after the lapse of twelve years. It goes to the existence and validity of the contract or debt itself—*ad valorem contractus*—and not merely to the remedy. When, therefore, this judgment was certified from the State of Maryland and sued on in this State, it stood there, by the law of Maryland, absolutely paid and extinguished.

The judgment was dead. How, then, can we be called on here to give it life and force again? The effect of the act of Congress of the 26th of May, 1790, requiring "full faith and credit" to be given to record of judgments from other States, is limited to the means of proof, and merely makes it evidence; but it does not extend to the effect and operation of what is so proved. This operation can only be such as is given to it in the State from which it comes. (Sto. Confl., § 1313; 2 Amer. Lead. Cas. 739–741.) The conclusion must be, that this judgment, having been paid by a conclusive presumption of law, and peremptorily extinguished in Maryland before it came to this State, cannot be allowed to have any greater force here than it had there, but must be considered here also as paid and extinguished.

Judgment affirmed. The other judges concur.