OF THE

## STATE OF MISSOURI

AT THE

### APRIL TERM, 1917.

(*Continued from Vol. 271.*)

## In re ASSESSMENT OF COLLATERAL INHERITANCE TAX IN ESTATE OF JAMES D. LANKFORD.

Division Two, July 27, 1917.

1. **FINDING OF FACTS: By Court Sitting as Jury: Appellate Rule.** The findings of fact by the trial court in a jury-waived law case are attended on appeal with the presumptions of verity which clothe the verdict of a jury, and will not be disturbed if supported by any substantial evidence whatever; but if there is no evidence upon which to base such finding, although no instructions were asked or given and no objections or exceptions were taken at the trial, but the point is saved only in the motion for a new trial, the appellate court will interfere.

2. **RESIDENCE: Intention: How Shown.** Residence is largely a matter of intention, and intention is to be deduced from acts and utterances of the person whose residence is in issue.

3. ———: ———: **As Manifested by Will: Abandonment.** A statement in decedent's will, made in this State shortly before his death in this State, that his residence was at "Marshall, Saline County, Missouri," is a solemn written admission that his residence was at such place; and a further statement that his residence had formerly been at "Pueblo, county of Pueblo and State of Colorado,"

272 Mo.]          (1)

together with the admission, plainly indicate both an abandonment of a former residence and the acquisition of a new one; and the two make out a prima-facie case of residence in this State for the purposes of an assessment of a collateral inheritance tax.

4. ——: ——: ——: Disqualification to Vote. The fact that, after an absence of thirty years in other states, decedent stated in November that he was not qualified to vote in this State, after his return to the residence of his niece in April, where his will was made and where he died in December, is no contradiction of the solemn admission in his will that he was a resident of this State, for he was not qualified to vote in this State until he had resided here one year.

5. ——: ——: ——: No Payment of Taxes. Nor does the fact that, after an absence of thirty years, he paid no personal taxes in this State, contradict the prima-facie case made by the will, since his death, after he returned to this State, occurred before he became liable for taxes here. Nor does the fact that he was not assessed for taxes here.

6. EXAMINATION OF FACTS: Appellate Rule. All the cases are reviewed, and it is *held* that the rule that has become firmly fixed in this State is: (a) The findings of facts, either general or special, of a trial court sitting in a jury-waived case at law, will have applied to them in, the appellate court the same presumptions of verity which attach to the verdict of a jury in a law case; (b) such findings of fact may be examined by the appellate court if the point that there was no insufficient evidence is properly preserved in the motion for a new trial alone; (c) in such cases an examination as to sufficiency of the evidence may be had in the appellate court, whether or not instructions were asked, given or refused; and (d) such examination will extend only to a determination of the single question whether there is any substantial evidence to sustain the finding of the trial court. If there is such substantial evidence, and if such substantial evidence be merely contradictory, or, if the evidence adduced be such that reasonable men may draw therefrom more than one inference to sustain the judgment, or if the evidence offered reasonably tends to sustain the finding made, such finding is absolutely conclusive upon the appellate court, and it cannot interfere therewith; but if there is no substantial evidence to contradict the prima-facie case made out by plaintiff, the appellate court will reverse the finding made by the trial judge for defendant, and remand the cause for a new trial, with instructions that, if the evidence is not materially changed, the finding be for plaintiff.

Appeal from Saline Circuit Court.—*Hon. Samuel Davis,* Judge.

REVERSED AND REMANDED.

*A. B. Hoy* and *Orville M. Barnett* for appellant.

(1) Sec. 309, R. S. 1909, provides, in effect, that all property passing by will or the intestate laws of the State from any person while a resident of the State, to others than to certain excepted individuals and purposes, shall be subject to an inheritance tax; while the same section limits the inheritance tax payable on the estate of a non-resident to property which shall be within the State at the time of death. In the estate at bar a large part of the personalty was at death of testator located outside of the State. By the terms of the will a large part of the estate passes to those whose right to succession is subject to payment of inheritance tax if decedent was domiciled in Missouri; a smaller portion, by reason of being within the State, is subject to tax, if decedent was a non-resident. (2) There is no substantial evidence upon which to base the finding of the trial court to the effect that decedent was a non-resident; and that the only evidence entitled to consideration on that question is conclusive that the testator was at date of death a resident of and domiciled in Saline County, Missouri. (3) The evidence upon which appellant relies as showing residence in this State is found wholly in positive and unqualified declarations in the last will and testament. (a) The weight to be given to such declarations must very much depend upon the particular circumstances of each case. Smith v. Croom, 7 Fla. 161; In re Ayers Estate, 84 Neb. 16; Ennis v. Smith, 14 How. 400; Wilson v. Terry, 9 Allen (Mass.), 214; Christye on Inheritance Taxation, p. 824; 14 Cyc. 864. (b) The probative force of such declaration is increased by the appointment of executor for the declared purpose of executing testator's will in the same jurisdiction of which he declares himself to be a resident. Merrill v. Morrissett, 76 Ala. 440; 4 Ency. Evidence, 862. (c) The whole tenor of a will may be such that it is inconsistent with the idea of testator's residence abroad. Cruger v. Phelps, 47 N. Y. 61. (4) Conceding every word of the testimony to be true, there is nothing therein overcoming the strong prima-facie

proof of residence contained in the declarations made by testator himself under the solemn sanction of his last will and testament. (5) Domicile of deceased is established in Missouri as of April 12, 1912, and such domicile is presumed to have continued without clear proof of abandonment, and the setting up of a new domicile outside the state. Ramey v. Dayton, 77 Mo. 682; 14 Cyc. 859; In re Coulton's Estate, 128 Iowa, 542; Anderson v. Watts, 138 U. S. 694; Inhabitants v. Inhabitants, 88 Mass. 508.

*Robert M. Reynolds* and *Albert R. James* for respondents.

(1) The finding and judgment of the trial court on a question of fact in a law case, in which no instructions are asked or given, cannot be reviewed or disturbed by the appellate court. Rausch v. Michel, 192 Mo. 293; Jordan v. Davis, 172 Mo. 599; Lewis v. Muse, 130 Mo. App. 201; Sutter v. Raeder, 149 Mo. 307; Bozarth v. Legion of Honor, 93 Mo. App. 564; Easley v. Elliot, 43 Mo. 289; Wilson v. Railroad, 46 Mo. 36; Weilandy v. Lemuel, 47 Mo. 322; Hamilton v. Boggess, 63 Mo. 233; Henry v. Bell, 75 Mo. 194; Harrington v. Minor, 80 Mo. 270 Gaines v. Fender, 82 Mo. 497; Cunningham v. Snow, 82; Mo. 587; Sieferer v. St. Louis, 141 Mo. 586; Swayze v. Bride, 34 Mo. App. 414; O'Howell v. Kirk, 41 Mo. App. 523; Claflin v. Burkhart, 43 Mo. App. 226; Morgan v. Railroad, 51 Mo. App. 523; Hatton v. St. Louis, 264 Mo. 634; Scarritt Est. v. Casualty Co., 166 Mo. App. 570; Buford v. Moore, 177 S. W. 865; Wilkinson v. Western Union, 163 Mo. App. 71; Prendergast v. Graverman, 166 Mo. App. 33; Strother v. Barrow, 246 Mo. 241; Paxton v. Bonner, 172 Mo. App. 479; Keyser v. Hayes, 190 Mo. App. 380. (2) The determination of a person's residence depends on his intention and his intention must be judged by all the facts and circumstances in connection with his residence. Hall v. Schoeneck, 128 Mo. 661; Stephens v. Larwill, 110 Mo. App. 156; Green v. Beckwith, 33 Mo. 384; Johnson v. Smith, 43 Mo. 449; State

ex rel. Ramey v. Dayton, 77 Mo. 678; Chariton County v. Moberly, 59 Mo. 238; State ex rel. v. Bunce, 187 Mo. App. 607; Northern v. McGaw, 189 Mo. App. 362; City of Winchester v. Van Meter, 164 S. W. (Ky.) 323. James D. Lankford, not being a resident of Missouri, the cash, bank draft and certificates of stock in foreign corporations, which were in Missouri at the time of his death, merely for safe-keeping and not otherwise, are not subject to the collateral inheritance tax in the State of Missouri. Gilbertson v. Oliver, 4 L. R. A. (N. S.) 953; Cooley on Taxation (3 Ed.), 24; Kirtland v. Hotchkiss, 100 U. S. 491; 37 Cyc. 1561; Matter of Tulane, 51 Hun, 213, 4 N. Y. Supp. 36; 37 Cyc. 1563; Neilson v. Russell, 19 L. R. A. (N. S.) 887; People v. Griffith, 245 Ill. 532; In re Helena, 236 Pa. 213, 46 L. R. A. (N. S.) 1173, 1175 (notes); Dunham v. Trust Co., 193 N. Y. 642; In re Bishop, 82 App. Div. 112, 81 N. Y. Supp. 474; Ross on Inheritance Taxation, sec. 181.

FARIS, J.—This is a proceeding begun in the probate court of Saline County for the purpose of assessing a collateral inheritance tax against the estate of James D. Lankford, deceased. The probate court held that the estate was subject to the tax, but upon an appeal to the circuit court of Saline County and a trial therein of the issues *de novo,* that court found that decedent was not, at the time of his death, a resident of Missouri and therefore his estate was not liable to this tax, and judgment went in favor of the estate. From this judgment an appeal was taken.

The facts shown in evidence are few and simple. The movant for the assessment of this tax (whom for convenience we shall hereinafter designate as plaintiff) offered the will of James D. Lankford (called herein decedent) as containing a solemn admission of the fact of his residence in this State, and after also offering the appraisement and other formal orders, rested. The apposite provisions of the will of decedent are the first and sixth clauses, which run in pertinent part thus:

"I, James D. Lankford, *of Marshall, Saline County, Missouri, formerly of Pueblo, county of Pueblo and State of Colorado,* being of sound and disposing mind, revoke all former wills by me made, and now make this, my last will and testament."

The will further provided in the sixth clause thereof that "in the event of the death of either of said legatees the said Belle Lankford, Paris M. Walker, Marian Garrard or Nancy Hagood leaving children or other descendants surviving them (direct descendants) as heirs, then it is my will that my said trustees shall thereupon and thereafter hold said share of such one so dying for the use and benefit of the children or direct descendants of such one who according to the laws of descent and distribution of the State of Missouri shall be entitled as heirs of such one to claim such estate."

It was further provided by other paragraphs of said will that certain trustees to administer further provisions of the will, which provisions are not here pertinent, should be appointed by the circuit court of Saline County, Missouri, or by the judge thereof in vacation, and that the bonds required to be given by the trustees should be made by "some responsible corporation authorized to execute bonds in the State of Missouri as surety." It was further provided in the eighteenth paragraph of said will that in case it became necessary to administer the estate of decedent in the probate court such administration should be had *"in accordance with said trusts and the proper orders of the probate court and the laws of the State of Missouri."* (Italics ours.)

On the part of the beneficiaries under said will (hereinafter for convenience called defendants) the testimony of but one witness was offered and defendants rested. The whole of the testimony for defendants elicited from the one witness mentioned, is as follows:

"James D. Lankford was my uncle and I was well and intimately acquainted with him during his lifetime. He was born in Saline County, Missouri, and lived here until about thirty years ago, at time which he went to the State of Colorado, took up his residence there, went

into business in partnership with his brother, Garrett Lankford, and made Colorado his home. This partnership continued until about seven or eight years ago, when it was dissolved. Since that time James D. Lankford, so far as I know, has maintained no permanent home, but has spent a portion of his time in Colorado, Oklahoma, Old Mexico, Kansas and Missouri, probably spending more of his time in Missouri than any other one place. He had large property interests in Oklahoma, Old Mexico, Colorado and Kansas, and would spend a portion of his time each year in these places looking after his interests. He never voted in Missouri or asserted any of the rights of citizenship here since taking up his residence in the State of Colorado thirty years ago. He was never assessed on any property or paid any taxes on any property in Missouri since leaving here thirty years ago. At the time of his death, December 25, 1912, he had been in Marshall, Missouri, with his niece since about the 1st of September, 1912, or about four months. On election day, in November, 1912, knowing that he was a great admirer of Woodrow Wilson, I asked him if he was not going to vote for his friend Wilson and he said 'No, I have no vote here.' He said nothing further in regard to the matter. I did not know of his having any settled home after the dissolution of his partnership in Colorado."

The court made a special finding of facts upon the one question of whether decedent was or was not at the time of his death a resident of Missouri and held that "James D. Lankford, at the time of his death, had not established his domicile in Saline County, Missouri, and was not a resident of said county within the meaning of the statute in such cases made and provided," and thereupon rendered judgment that the estate of decedent was not liable for any tax whatever under the Collateral Inheritance Tax Law. It will be seen therefore that the question of the residence of decedent is the sole question in the case.

In re Lankford Estate.

This is a case at law tried before the court sitting as a jury. No instructions were asked or given. The court found against the plaintiff upon the facts, holding that the evidence offered by plaintiff failed to show that decedent at his death was domiciled in Saline County. It is urged that this finding is against the evidence, and we are asked by plaintiff to reverse the case for this reason. Against this contention defendants' learned counsel urge that since the case is a law case, tried before the court without a jury; since no objections or exceptions (save to the overruling of the motion for a new trial) were taken upon the trial, and no instructions were asked, given, or refused, the finding of the learned judge *nisi* is absolutely conclusive upon us here upon appeal.

Finding of Trial Judge.

If there is any substantial evidence to sustain the judgment below, we are required to sustain it. The findings of fact by the learned trial judge in a jury-waived case at law come to us attended by all of the presumptions of verity which clothe the verdict of a jury (38 Cyc. 1946; 2 R. C. L. 206; Woods v. Johnson, 264 Mo. l. c. 293; Hatton v. St. Louis, 264 Mo. 634); and in such case the finding of the trial judge will not be disturbed upon appeal if such finding be supported by any substantial evidence whatever. The rule to be followed in such cases is that while we will not weigh the evidence, we will interfere when there is no evidence whereon to base the judgment, although no instructions are asked, or given. [State ex rel. v. Guinotte, 156 Mo. l. c. 521; Moore v. Hutchinson, 69 Mo. 429; Wilson v. Albert, 89 Mo. l. c. 544; May v. Crawford, 150 Mo. l. c. 528; Garrett v. Greenwell, 92 Mo. l. c. 125; Robbins v. Phillips, 68 Mo. 100; Whitsett v. Ransom, 79 Mo. 258; Hartt v. Leavenworth, 11 Mo. 629; Hubbard v. Fuchs, 164 Mo. l. c. 430.] Applying this rule to the facts before us in the instant case, we think there was no substantial evidence contravening the case made by plaintiff's proof of decedent's solemn written admissions and conclude that the judgment ought to have been for appellant.

Residence is largely a matter of intention. [Lankford v. Gebhart, 130 Mo. 621.] This intention is to be deduced from the acts and utterances of the person whose residence is in issue. Here by a most solemn

**Residence.** written admission made in the very will by which the property was devised to defendants, decedent said that his residence on the 12th day of April, 1912, was at "Marshall, Saline County, Missouri," and that his former residence had been "Pueblo, county of Pueblo and State of Colorado;" which admission plainly indicated both an *abandonment* of a former or old residence and the *acquisition* of a new one. [Johnson v. Smith, 43 Mo. 499.] There is not a scintilla of proof that decedent ever had a residence in but two states. He was born in Missouri. He went to Colorado, remained there about thirty years, and then in April, 1912, before his death in the December following, came back to Saline County, Missouri, where his relatives live, made his will, thereafter visited divers places where he had financial interests, till September, 1912, when he came back to Saline County, and there remained at the house of his niece till he suddenly died in December, 1912.

The only contention that is made whereon is bottomed any conflict in the evidence which would serve to make applicable here the rule of reliance upon the lower court's finding, is upon the decedent's statement to his nephew Walker that he (decedent) "had no vote in Missouri." Clearly this is no contradiction, for manifestly decedent had never had a domicile in Missouri since he left it thirty years before, until he came back and made his will in April, 1912. He could not vote in November, 1912, for the very simple reason that he had not been domiciled in Missouri for one whole year. So he could truthfully have made the statement attributed to him and yet have been at his death a resident and even a citizen of Missouri. In short, the statement made to the witness Walker by decedent proves nothing, and since the solemn admission made in writing made out a prima-facie case for plaintiff, the judgment should have been for plaintiff, unless some evidence came in on the part of defendants

which was contradictory of it. A reference to all of the evidence offered by defendants, which in fairness we set forth in the statement, discloses that nothing whatever was offered by defendants to disprove the prima-facie case so made out by decedent's solemn written admission contained in his will.

While not urged upon our attention, we may say in passing that the facts that decedent was not assessed in Saline County and that he paid no taxes therein, are likewise incompetent and of no probative value. If he *had paid* taxes on personal property such fact would have been competent and of some evidentiary weight; but manifestly the fact that he did not do so can be of no aid to us here and was none to the court below. Moreover, we take notice that his death occurred too soon after his taking up residence in this State for him to become liable to pay taxes upon an assessment made at the earliest date thereafter, which was possible under our taxing statutes. Touching the fact that he was not assessed in this State the same principle applies. If he *had* procured an assessment of his personalty to be made, such fact would have been of probative value as indicating intention, but the fact of nonassessment can be of no evidentiary value, since no inferences touching it, which wholly affect decedent, can possibly be drawn from it; such failure could have arisen from the inadvertent neglect of the assessor, and certainly we cannot judicially notice that men are accustomed to run after the assessor in order to get their property assessed so that they may pay taxes. The evidence shows moreover that decedent was temporarily absent on June 1, 1912, and so continued till September, following.

It has been held here, in conformity with the rule elsewhere, that there is often a distinction between the word "residence," which is used in the applicatory statute (Sec. 309, R. S. 1909), and the word "domicile." [Johnson v. Smith, 43 Mo. 499; 34 Cyc. 1648; Sec. 8057, R. S. 1909; Hussman v. Druege, 181 S. W. l. c. 118.] If this distinction should, mayhap, exist in this case it

would open up an interesting question, which we do not find it necessary to pass on here.

II. The troublesome question as to how far this court is warranted in reviewing the evidence in cases at law tried before the court without a jury and wherein no instructions are asked or given, has apparently been ruled along contradictory lines. Particularly is this true as to the earlier cases decided prior to the enaction of what is now section 2083, Revised Statutes 1909, which seems to have been passed in 1871 (Laws 1871, p. 49, sec. 34), and which substantially requires an appellate court to render such judgment as the trial court ought to have given, and such judgment as to the appellate court shall seem according to law.

But however this may be, no settled rule was followed till some thirty-five years ago. [Lionberger v. Pohlman, 16 Mo. App. 392.] A large majority of the early cases held that unless the judgment of the court *nisi* were sustained by substantial evidence, we had power to reverse for this reason alone. [Rennick v. Walton, 7 Mo. 292; Wilson v. Burks, 8 Mo. 446; Hartt v. Leavenworth, 11 Mo. 629; Swan v. Hyde, 9 Mo. 849; Howard v. Coshow, 33 Mo. 118; Heyneman v. Garneau, 33 Mo. 565; Alexander v. Harrison, 38 Mo. 258; Morris v. Barnes, 35 Mo. 412; Blumenthal v. Torini, 40 Mo. 159; McKay v. Underwood, 47 Mo. 185; Garvin's Admr. v. Williams, 50 Mo. 206; Davis v. Fox, 59 Mo. 125.] There are a few early cases, only meagerly reported, however, which seem to hold that in any case at law tried by the court, or by a jury wherein no instructions were asked or given, the finding of facts *nisi* is absolutely conclusive upon the appellate court, regardless of whether there was any evidence whatever in the record to support such finding. [Easley v. Elliott, 43 Mo. 289; Wilson v. Railroad, 46 Mo. 36; Weilandy v. Lemuel, 47 Mo. 322; Hamilton v. Boggess, 63 Mo. l. c. 251.] But by the present rule,

which is well-settled, we may interfere if the judgment rendered is not supported by substantial evidence.

It was said in the very early case of Hartt v. Leavenworth, 11 Mo. 629, 1. c. 639, that: "We have uniformly declined interfering with the verdict of a jury, or a court sitting as a jury, where the evidence conflicted, and no point of law was raised by instructions. This court undoubtedly possesses the power of ordering a new trial, where the circuit court refuses to grant one, on the sole ground of the verdict being against evidence. It is a power, however, which it has not been thought expedient to exercise, unless in very clear cases. We think the present is a case of this character, there being no evidence whatever in the record to show any title in Crain, from whom the defendant derives his right, except that the box containing the property was marked with his name, and that circumstance is satisfactorily explained."

The above case was one wherein the evidence adduced on plaintiff's part was wholly oral, and while the opinion considered the verdict of a jury, we have seen that the rule is precisely the same as to the presumptions which we here entertain in a case at law whether the judgment is based on a jury's verdict, or upon the finding of the court sitting as a jury. [Woods v. Johnson, 264 Mo. 289, and cases cited *supra.*]

In the case of Pipkin v. Allen, 24 Mo. 520, much of the evidence was oral; in fact, the case turned at last wholly upon testimony of witnesses. Plaintiff being cast below appealed, and this court reversed and remanded the case, saying: "The court below should have sustained the motion to review the finding in regard to the fact about the cancellation of the sale from Boyle to James Anderson. The evidence in this record does not justify or support that finding. When Boyle made his deed to Russell in November, 1813, the contract or sale between himself and James Anderson was manifestly in existence —in force. Anderson died before the date of that deed to Russell. How then became the contract cancelled or rescinded? The finding is not warranted in this particular by what appears to us of record. The judgment must

be reversed and the cause remanded for further proceedings."

The case of Robbins v. Phillips, 68 Mo. 100, was replevin. The evidence adduced upon the crucial question was all oral. Plaintiff lost and brought error to this court. We reversed it and sent it back for a new trial, saying: "No instructions were asked or given and the question presented is whether the evidence justifies the finding. We are not of opinion that it does, or that it has any tendency in that direction. . . . . Judgment reversed and cause remanded."

The case of Whitsett v. Ransom, 79 Mo. l. c. 260, was for damages for assault and battery. Naturally the evidence was wholly oral. Plaintiff being cast appealed. This court in an opinion by PHILIPS, C., reversed and remanded it upon the sole question of the weight of the evidence, saying upon that point this: "The question, therefore, for determination is, whether the record presents such a state of evidence as to justify this court in ordering a *venire de novo*. It is rarely the case that appellate courts interfere with the discretion of the trial courts in directing a new trial on a mere question of weight of evidence. The credibility of witnesses and the probative force of a given fact are peculiarly within the province of the jury. It is only where this court is well satisfied of a palpable disregard of law and evidence on the part of the trial jury, and that the trial court in refusing a new trial has wrought manifest injustice, or shown an unjudicial bias, that it feels it to be its duty to interfere."

The case of Garrett v. Greenwell, 92 Mo. l. c. 125, was an action for damages for burning a threshing machine. The evidence adduced could not therefore have been documentary. Plaintiff being defeated *nisi* appealed. We reversed and remanded the case, saying: "In ordinary cases, where the action is one at law, this court does not interfere in regard to questions of the mere weight of evidence. In this case, however, the evidence is of the most cogent character that Charles Jolioh burned the plaintiff's machine. This evidence is both

direct and circumstantial, consisting of previous threats, and subsequent admission of the fact of his guilt; his wearing boots which made certain tracks, and those tracks being found the next morning, leading directly from where the machine was burned to within a few yards of his house; his alarmed and excited manner, when visited by a neighbor the next day, and finally his act in changing those boots for others, at the suggestion of another neighbor. Looking at all these things, it is a matter of profound surprise that the jury, with all this evidence before them, could have found as they did. But, inasmuch as they have done so, our duty, under the rule announced in the cases of Whitsett v. Ransom, 79 Mo. 258, and Spohn v. Railroad, 87 Mo. 74, is clear, and so the judgment is reversed and the cause remanded.''

The identical rule upon principle is announced in dozens of other cases decided by us, a few of which we append: Moore v. Hutchinson, 69 Mo. 429; Morris v. Barnes, 35 Mo. 412; Baker v. Stonebraker, 36 Mo. 338; Wilson v. Albert, 89 Mo. l. c. 544; May v. Crawford, 150 Mo. l. c. 528; State ex rel. v. Guinotte, 156 Mo. l. c. 521; Graney v. Railroad, 157 Mo. l. c. 680; Hubbard v. Fuchs, 164 Mo. l. c. 430; Morrison v. Bomer, 195 Mo. l. c. 538; Woods v. Johnson, 264 Mo. 289; Hatton v. St. Louis, 264 Mo. 634; Truitt v. Bender, 193 S. W. 838.

In the case of State ex rel. v. Guinotte, supra, at page 520, it was said: ''Since then, however, this court has made the same ruling as to the verdict of a jury in will contests as that in ordinary trials, to-wit, that such a trial is an action at law, and that this court would not reverse the judgment because the jury found against the weight of the evidence. [Young v. Ridenbaugh, 67 Mo. 574.] And in Appleby v. Brock, 76 Mo. 314, a similar ruling was made, and also it was ruled in that case that this court would examine the record to see if there is any testimony to support the finding. To like effect is Mc-Fadin v. Catron, 138 Mo. l. c. 227. The amendment of the statute of 1825 in the particular mentioned, as well as the rulings just quoted, have thus placed a will contest on the same plane as the trial of any other civil action,

for we have ruled in many cases of ordinary trials that while we will not weigh the evidence in law cases, yet that we will interfere when there is no evidence whereon to base the verdict, although no instructions are asked. [Hartt v. Leavenworth, 11 Mo. 629; Robbins v. Phillips, 68 Mo. 100; Pipkin v. Allen, 24 Mo. 520; Heyneman v. Garneau, 33 Mo. 565; Morris v. Barnes, 35 Mo. 412; McEvoy to use v. Lane, 9 Mo. 49; Wilson v. Albert, 89 Mo. l. c. 544; Baker v. Stonebraker, 36 Mo. 338; Whitsett v. Ransom, 79 Mo. 258.]"

The books are full of cases of actions to break wills, wherein, as we have over and over again ruled, the proponent of the will pulls the laboring oar (Carl v. Gobel, 120 Mo. l. c. 295; Goodfellow v. Shannon, 197 Mo. l. c. 278; Craig v. Craig, 156 Mo. l. c. 362), yet time after time we have held that verdicts which overturned or "broke" wills, but which had no substantial foundation in the evidence on which to stand, must be reversed— *many times with directions to probate the rejected will.* [Thomasson v. Hunt, 185 S. W. l. c. 169; Hayes v. Hayes, 242 Mo. 155; Winn v. Grier, 217 Mo. 420; Sayre v. Trustees of Princeton University, 192 Mo. 95; Archambault v. Blanchard, 198 Mo. l. c. 425; Story v. Story, 188 Mo. 110; Hamon v. Hamon, 180 Mo. l. c. 702; Byrne v. Byrne, 181 S. W. l. c. 392.]

On the other hand the cases which seem to announce a different rule are for the most part we think fairly easy to reconcile with what we say above, and with what the cases hold which we cite. For example, the case of Buford v. Moore, 177 S. W. l. c. 872, was a case at law tried by the court without a jury. Plaintiff won upon evidence which was contradictory. Held, correctly, that the finding of the trial court upon the facts is conclusive. The learned writer of that opinion did not intend to say that where plaintiff recovers in a case at law tried before the court, the defendant may not challenge the sufficiency of plaintiff's evidence to make out a case. Hamilton v. Boggess, 63 Mo. l. c. 251, is likewise a case at law tried before the court wherein *plaintiff had judgment.* There was a mass of contradictory testimony offered,

which this court declined to weigh, saying that in such a case we would not pass upon the weight of the evidence. But by way of *dictum,* the learned judge went out of his way to say: "We wish it to be understood that it is not our province to determine facts, or review the finding of juries or courts on them, except in chancery cases."

Certainly the learned jurist who wrote the opinion in the above case did not intend to say that a defendant who lost below cannot in an appellate court challenge the sufficiency of the evidence offered by plaintiff as the basis of the latter's recovery. This case contains the very strongest language we have been able to find upon this point and yet nothing is clearer than that the *obiter dictum* above quoted is palpably wrong.

The case of Chilton v. Nickey, 261 Mo. 232, was a case wherein there was some evidence to uphold the finding *nisi.* So it was correctly ruled by us that in such a case the lower court's finding is conclusive upon the appellate court. [Cunningham v. Snow, 82 Mo. 587.] The case of Morrison v. Bomer, 195 Mo. l. c. 538, which is much quoted and relied on as stating the rule of absolute conclusiveness, does not do so, but on the contrary states the rule thus: "This determination is conclusive upon us if it might reasonably have been reached upon the evidence presented." [Hatton v. St. Louis, 264 Mo. 634.] Similarly are Strother v. Barrow, 246 Mo. l. c. 251; Sieferer v. City of St. Louis, 141 Mo. l. c. 593; Bartlett v. Kauder, 97 Mo. 356; Schad v. Sharp, 95 Mo. 573, and Jordon v. Davis, 172 Mo. l. c. 608, all cases at law wherein plaintiffs prevailed. Moreover, there was in all of them conflicting evidence. So the rule stated in those cases, applied to the facts thereof, is undoubtedly correct, and in nowise militates against the rule we labor to show is correct. Neither do we find any fault with the case of Rausch v. Michel, 192 Mo. l. c. 302, urged upon our attention. There the court said: "This is an action at law. No instructions were asked, given or refused. There is, therefore, no question open for review here except errors apparent upon the record proper, and

*the question whether under the issues the plaintiff made
out a prima-facie case."*   (Italics ours.) This is likewise
the rule stated in Sutter v. Raeder, 149 Mo. 1. c. 307.
Besides, the above case, in addition to stating the rule
correctly, was a case wherein plaintiff recovered below.
The rule in such case is too well settled for quibble, dis-
cussion or citation of authority.

There are, as we say above, some old cases   which
while regrettably meager as to the reported facts, seem
boldly to announce the rule that regardless of the entire
lack of evidence on which to sustain the verdict of a jury,
or the judgment of a judge sitting in a jury-waived case
at law, such verdict or judgment is conclusive upon us
on appeal. [Easley v. Elliott, 43 Mo.. 289; Wilson v.
Railroad, 46 Mo. 36; Weilandy v. Lemuel, 47 Mo.   322.]
While these cases have never been overruled specifically,
they have long been ignored in practice. In the first of
these cases, namely, Easley v. Elliott, supra, *the plaintiff
recovered;* yet it was said that defendant could not chal-
lenge the sufficiency of the evidence adduced, or object
that there was no evidence whatever to support the judg-
ment rendered. No one would be so bold as now to urge
such a doctrine as this.

In the case of Lionberger v. Pohlman, 16 Mo. App. 1.
c. 397, THOMPSON, J., who was both a most learned judge
and an able writer upon the substantive law, refers   to
the change in our holdings upon this question, and thus
states the rule: "The rule settled by recent decisions in
the Supreme Court and this court is, that where there
is no substantial testimony to support the verdict of a
jury upon a given issue, the appellate court will reverse
a judgment on the verdict."

This holding of the above learned judge has been
followed by the Courts of Appeals with practical una-
nimity of decision since the rule announced was promul-
gated. [Wilkinson v. Western Union Tel. Co., 163 Mo.
App. 71; Prendergast v. Graverman, 166 Mo. App. 33;
Paxton v. Bonner, 172 Mo. App. 479; Keyser v. Hays,
190 Mo. App. 380.]

We have already seen that we early got away from the strict and crabbed rule of Easley v. Elliott, supra, and announced a rule substantially in the language of that Judge THOMPSON sets forth. [Whitsett v. Ransom, supra; Garrett v. Greenwell, 92 Mo. l. c. 125; Woods v. Johnson, supra; Hatton v. St. Louis, supra.] Any change in this well settled rule would, *if carried to its last analysis,* work havoc in many fields of the law. It would render us wholly unable to interfere in any case with the verdict of a jury or to pass as a matter of law upon the point of lack of evidence in any case whatever. It would be to abdicate the powers conferred on us by the Constitution and the statute and leave both trial courts and juries untrammeled by any overseeing control.

It follows, we think, that from the adjudged cases, we may fairly deduce the below conclusions: (a) The findings of fact, either general or special of the trial court sitting in a jury-waived case at law, will have applied to them in an appellate court the same presumptions of verity which attach to the verdict of a jury in a law case (Woods v. Johnson, supra); (b) such findings of fact may be examined by an appellate court if the point that there was insufficient evidence be properly preserved in the motion for a new trial alone (Blakely v. Railroad, 79 Mo. 388; Carver v. Thornhill, 53 Mo. 283); (c) in such cases an examination as to the sufficiency of the evidence may be had here, whether there were instructions asked, given or refused; but (d) such examination by us will extend only to a determination of the single question whether there is any substantial evidence to sustain the finding of the court. If there is such substantial evidence, and if such substantial evidence be merely contradictory, or, if the evidence adduced be such that reasonable men may draw therefrom more than one inference or inferences to sustain the judgment (Finnegan v. Railroad, 244 Mo. l. c. 653; Linderman v. Carmin, 255 Mo. l. c. 66), or (stated another way), if the evidence offered reasonably tends to sustain the finding

made (Hatton v. St. Louis, supra), such finding is absolutely conclusive upon us, and we cannot interfere.

Measured by the above rules, we think the prima-facie case made out by the plaintiff herein was not contradicted by any substantial evidence whatever. It results that the case must be reversed and remanded for a new trial, if the parties are so advised; upon which, should the proof on defendants' part be not materially strengthened, the judgment should be for plaintiff. It is so ordered. All concur.